**SO ORDERED.**

**SIGNED this 26th day of April, 2012.**

_Dale L. Somers_
Dale L. Somers
United States Bankruptcy Judge

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| In Re: | |
| **DJ CHRISTIE, INC.,** | **CASE NO.  11-40764** |
| | **CHAPTER 11** |
| Debtor. | |
| **DJ CHRISTIE, INC.,** | |
| Plaintiff, | |
| v. | **ADV. NO.  11-7043** |
| **ALAN E.  MEYER, JOHN R.  PRATT, ALEXANDER W.  GLENN,  and DAVID J.  CHRISTIE,** | |
| Defendants. | |

## REPORT AND RECOMMENDATION TO THE DISTRICT COURT ON MOTION TO WITHDRAW REFERENCE

John R. Pratt ("Pratt"), a defendant, moves to withdraw the reference of this adversary proceeding and transfer the case to the United States District Court for the District of Kansas (the "Motion").[1]  Pursuant to District of Kansas Local Rule 83.8.6, the Court recommends that the reference to this case be withdrawn to preserve the right to a jury trial, but such withdrawal be delayed until the proceeding is in a posture for the jury trial to commence.[2]

## FACTUAL AND PROCEDURAL BACKGROUND

The Motion is one move in an ongoing chess game between Debtor, David J. Christie ("Christie"), and Alex W. Glenn ("Glenn") (collectively "the Christie Interests") and Dovetail Builders 2, L.L.C. ("Dovetail"), Alan E. Meyer ("Meyer"), and Pratt (collectively "the Meyer Interests").  A general understanding of the prior moves of the parties is necessary to fully understand the Motion, as well as other related matters presently before the Court.[3]

---

[1] Dkt. 61.

[2] D. Kan. Rule 83.8.6(f) provides that upon filing a motion to withdraw the reference and for transfer, the Bankruptcy Court will submit a written recommendation to the District Court as to whether the reference should be withdrawn.

[3] *See* Debtor's Motion for Imposition of Stay Under 11 U.S.C. § 105 against Alan E. Meyer and John R. Pratt (Case No. 11-40764, dkt. 125) which the Court denied by a separate order; and Washington International Insurance Company's Motion for Relief From Stay (Case No. 11-40764, dkt. 101), also denied by a separate order.

**The Federal Court Litigation**

In 2005, the Christie Interests had conversations with the Meyer Interests about development of a residential housing project in Junction City, Kansas.  Disputes arose, and in May 2007, the Meyer Interests sued the Christie Interests in federal court (the "Federal Court Litigation").[4]  Following a jury trial, on May 22, 2009, a judgment was entered in favor of the Meyer Interests in the amount of $14,696,345.00, plus post judgment interest at the rate of 0.5%, along with costs.[5]

The Christie Interests filed an appeal to the Tenth Circuit Court of Appeals.  As a condition for a stay pending the appeal, the district court required the Christie Interests to post a supersedeas bond for $1.125 million (the "Bond").  Washington International Insurance Company ("Washington"), as surety, issued the Bond on January 20, 2010.  Christie, individually, is the principal, while Meyer, Pratt, and Dovetail are the judgment creditors.  According to Meyer and Pratt, the Bond was set in an amount significantly less than the judgment because Christie and Glenn represented that they had significant nonexempt illiquid assets to pay the judgment.

On April 25, 2011, the Tenth Circuit issued its mandate, affirming liability of the Christie Interests to Meyer and Pratt, but reversing as to Dovetail.  On July 15, 2011, after

---

[4] *Meyer v. Christie*, Case No. 07-2230-CM (D. Kan. filed May 30, 2007).

[5] *Id.*, dkt. 297.

Meyer and Pratt obtained relief from stay,[6] the district court entered the judgment on the remand issues and a final amended judgment in the amount of $7,170,603.00 plus $100 punitive damages and costs in favor of Meyer and Pratt against the Christie Interests (the "Judgment"). Several assignments of the Judgment were made, and notice of an attorney lien has been filed.

Meyer and Pratt undertook proceedings to satisfy the Judgment against nondebtors Christie and Glenn. The Clerk of the District Court entered an order granting Meyer's and Pratt's motion for disbursement of the Bond proceeds, directing payment of the full amount of the Bond to Meyer's and Pratt's attorneys within five days (the "Bond Disbursement Order"). On October 13, 2011, the district court entered a writ of general execution as to Glenn and Christie. The next day, Meyer and Pratt filed notice in the bankruptcy court that they intended to obtain the stock certificates issued by Debtor to Christie (the "Stock") to take control of Debtor. On November 3, 2011, attorneys for Meyer and Pratt accompanied the United States Marshall to Christie's home to seize the Stock. Christie did not turnover the Stock. Meyer and Pratt filed a motion for contempt in the district court against Christie for failure to turnover the Stock and also against Washington for failing to turnover the Bond proceeds.

---

[6] DJ Christie, Inc. had filed this bankruptcy case on May 20, 2011. On July 15, 2011, Meyer and Pratt were granted relief from stay for the limited purpose of allowing the district court to finally determine matters pending following the remand from the Tenth Circuit. A request that relief include allowing the district court to determine if the judgment is subject to being satisfied by offset of the assigned Iowa Judgments was denied based upon fact that the bankruptcy case was in its early stages and Debtor should be given an opportunity to negotiate with its creditors. Dkt. 68.

**The Iowa Judgments**

Much of the controversy in this bankruptcy case, and the focus of this adversary proceeding, involves the Christie Interests' acquisition of assignments of judgments against Meyer and Pratt, which they propose to use to satisfy the Judgment by offset.  On April 29, 2011 and May 2, 4, and 18, 2011, the Christie Interests were assigned judgments which had been entered against Meyer, Pratt, and others in Iowa on June 3 and 21, 2010, July 7 and 20, 2010, August  17, 2010 and September 3, 2010 (the "Iowa Judgments").  The total amount of the Iowa Judgments allegedly exceeds the Judgment in favor of Meyer and Pratt against the Christie Interests.  Some or all of the Iowa Judgments were registered in Dickinson County, Kansas, and a portion of the Iowa Judgments were registered in Jackson, County, Missouri.

On June 8, 2011, the Christie Interests filed garnishment actions in Jackson County, Missouri and Pratt, Kansas, naming Washington, the bonding company, as garnishee.  On June 29 and August 5, 2011, garnishment orders issued from Jackson County were served on Washington.  On October 18, 2011, Washington filed a motion for relief from stay to allow it to comply with its legal obligations as to the Bond as a result of the federal Bond Disbursement Order and the state garnishment orders.[7]  By separate order, the Court has denied Washington's motion for relief from stay.

---

[7] Case No. 11-40764, Dkt. 101.

**Debtor's Chapter 11 case**

Debtor filed for Chapter 11 relief on May 20, 2011.  Debtor's  schedules, filed on June 17, 2011,[8] show the following: (A)  Real Property: approximately 1.47 acres at the Intersection of  I-70 and 57th Street, Kansas City, Kansas, valued at $40,000, not subject to any liens; (B)  Personal Property: approximately $2,400.00 cash, over $7.5 million in judgments against Meyer and Pratt, an interest in the Bond by virtue of garnishments, potential malpractice claims against two law firms, and office furniture valued at approximately $1,000; (D) Secured Claims: none; (E) Unsecured Priority Claims: none; and (F) Unsecured Claims: approximately $930,000 loans to cover operating expenses, $866,505 of which is owed to Christie and the remainder of which Meyer and Pratt contend is also owed to insiders.  Debtor's monthly reports show no ongoing business activity.

Both Meyer and Pratt filed proofs of claim.  Debtor objected to these claims based upon the contention that they are fully satisfied by offsetting the Iowa Judgments.  No discovery or other preliminary matters have been commenced to resolve these contested matters.

**The Adversary Proceeding**

On July 29, 2011, Debtor filed this adversary proceeding against defendants Meyer, Pratt, Washington, Glenn, and Christie (the "Adversary Proceeding").  The

---

[8] *Id.*, Dkt. 42.

Adversary Complaint alleges three counts: (1) determination of the validity, extent, and priority of judgment liens held by Meyer and Pratt on the estate's real property; (2) determination of amounts due between Debtor and Meyer and Pratt, based upon setoff of the Iowa Judgments, including cancellation of the Bond because the setoff would satisfy the Judgment in full; and (3) judgment against Meyer and Pratt for the excess of the assigned Iowa Judgments over the amount owed under the Judgment against the Christie Interests.[9]  Defendants Glenn and Christie filed a crossclaim against Defendants Meyer and Pratt on December 12, 2011, containing three counts: (1) a determination that setoff of the Iowa Judgments against the Judgment is permitted, leaving a net amount due from Meyer and Pratt to Christie and Glenn; (2) a determination that the assignments made by Meyer and Pratt of the Judgment are invalid; and (3) a declaration that the Bond should be released because setoff satisfies the Judgment in full (the "Crossclaim").[10]  On January 17, 2012, Meyer and Pratt filed counterclaims and crossclaims against Debtor, Christie, Glenn, and Washington, containing five causes of action: (1) a declaration that the Christie Interests are not entitled to offset the Iowa Judgments to satisfy the Judgment; (2) a declaration that Meyer and Pratt are immediately entitled to the Bond proceeds; (3) a declaration that Meyer and Pratt are entitled to acquire the Stock from Christie, and, as a result of such acquisition, are entitled to control the affairs of Debtor; (4) equitable subordination of three claims allegedly held by insiders of the Debtor; and (5) avoidance

---

[9]  Dkt. 1.

[10] Dkt. 47.

of transfers of assets by Christie and Glenn to insiders as fraudulent transfers made with actual intent to hinder, delay, or defraud Meyer and Pratt and an award of punitive damages ("Counterclaims and Crossclaims").[11]  On the same day, Pratt filed this Motion to withdraw the reference to this Adversary Proceeding.

**The Interpleader Action**

On March 23, 2012, Ed Nazar, as liquidating trustee of The Bluffs, LLC, bankruptcy case,[12] filed a complaint for interpleader (the "Interpleader Proceeding").[13]  In The Bluffs bankruptcy, net proceeds from the sale of property were ordered to be distributed to the equity holders, one half to JC Investments, LLC and one half to Christie and Glenn.  Originally Christie's and Glenn's shares were to be held in escrow pending resolution of the District Court Litigation.  But the liquidating trustee has been served with orders of garnishment from the District Court of Dickinson County, Kansas, issued in litigation by Christie, Glenn and Debtor against Meyer and Pratt.  Approximately $1 million has been deposited in this Court's registry.  Although no answers have yet been filed, it is safe to assume that entitlement to the deposited funds will involve the same issue as raised in this Adversary Proceeding, which is the subject of this Motion.

---

[11]  Dkt. 63.

[12] *In re The Bluffs, Inc.*, Case No. 09-11978 (Bankr. D. Kan. March 20, 2012) (Notice of Declaration of Liquidating Trustee).

[13] *Nazar v. David J. Christie, et.al.  (In re DJ Christie, Inc.)*, Case No. 11-40764, Adv. No. 12-07016 (Bankr. D. Kan. March 23, 2012) (Complaint for Interpleader).

**ANALYSIS**

### A.  Statutory Basis for Withdrawal of Reference and Positions of the Parties

Pratt moves to withdraw reference pursuant to 28 U.S.C. § 157(d), which provides:

> The district court may withdraw, in whole or in part, any case
> or proceeding referred under this section, on its own motion
> or on timely motion of any party, for cause shown. The
> district court shall, on timely motion of a party, so withdraw a
> proceeding if the court determines that resolution of the
> proceeding requires consideration of both title 11 and other
> laws of the United States regulating organizations or activities
> affecting interstate commerce.

That subsection creates two bases for withdrawal of reference: mandatory withdrawal

when the case requires consideration of both the Bankruptcy Code and other federal laws

regulating organizations and activities affecting interstate commerce; and permissive

withdrawal for cause.  This proceeding concerns permissive withdrawal.

When, as in this case, a motion to withdraw reference is filed by the original

defendant, District of Kansas Local Rule 83.8.6(c) provides that the motion shall be filed

"within 20 days after movant has entered an appearance or been served with summons or

notice."  The predecessor of the current local rule was construed by District Judge Crow

to mean that the motion "is timely if filed within twenty days of *either* the movant

entering its appearance or the movant having been served."[14]  Pratt entered his appearance

by answering Christie and Glenn's Crossclaim on January 11, 2012 and the Adversary

---

[14] *In re Hardesty*, 190 B.R. 653, 655 (D. Kan. 1995) (emphasis supplied).

Complaint on January 13, 2012.  The Motion to withdraw reference filed on January 17, 2012 was therefore timely.

As to permissive withdrawal of reference, 28 U.S.C. § 157(d) permits a district court to withdraw reference, in whole or in part, of any case or proceeding referred to the bankruptcy court, on timely motion of any party for cause.  Reference may be withdrawn for core and noncore matters.  Cause is not defined by the statute.  Demand for jury trial is recognized as cause.[15]  In addition, district courts have been directed to "consider the goals of promoting uniformity in bankruptcy administration, reducing forum shopping and confusion, fostering the economical use of the debtors' and creditors' resources, and expediting the bankruptcy process."[16]  Permissive withdrawal is discretionary.  Colliers states:

> Believing that a motion to withdraw smacks of forum shopping, the district courts have generally not been receptive to motions to withdraw the reference.  It has been stated that, in determining whether cause exists for withdrawing the reference, the court should consider the goals of promoting uniformity in bankruptcy administration, reducing forum shopping and confusion, conservation of debtors' and creditors' resources, expediting the bankruptcy process, and the right to a jury trial.  It is clear that cause must exist; it is improper for a district judge *sua sponte* to withdraw the reference and lift the automatic stay when no party had requested that relief.[17]

---

[15] *E.g., Manley Truck Line, Inc. v. Mercantile Bank of Kansas City*, 106 B.R. 696 (D. Kan. 1989); *see* cases collected at 1 Collier on Bankruptcy ¶ 3.04[1][b], n. 6 at 3-54 (Alan N. Resnick & Henry J. Sommer eds.-in-chief, 16th ed. 2011).

[16] *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 999 (5th Cir. 1985).

[17] 1 *Collier on Bankruptcy* ¶ 3.04[1][b] at 3-54 (footnotes omitted).

10

Pratt argues that cause for withdrawal exists, identifying prevention of forum shopping, judicial economy, and reduction of cost and delay.  As to judicial economy, Pratt argues that under *Stern v.  Marshall*,[18] this Court lacks power to enter final judgment on the state law claims.  Debtor opposes withdrawal, arguing that the proceeding involves core matters within this Court's jurisdiction to enter final judgment and that Pratt's other arguments do not justify withdrawal.

### B.  Examination of Relevant Factors

### 1.  There is a right to jury trial on at least one of the claims asserted by Meyer and Pratt in their Counterclaims and Crossclaims.

Pratt does not raise the right to jury trial as a basis for withdrawal of reference.  But the Court notes that in Meyer and Pratt's Counterclaims and Crossclaims, they requested a jury trial as to "all issues so triable."[19]  A jury trial is not requested by any of the other parties.  Because the Court concludes that one of the claims asserted is most likely triable to a jury, the Court finds that the request for jury trial is an important factor supporting withdrawal of the reference.

The extent of Meyer and Pratt's right to a jury trial is unclear.  Their claims are asserted without elaboration, and the jury trial issue has not been briefed or litigated.  As stated above, Meyer and Pratt filed proofs of claim, thereby consenting to the bankruptcy court's jurisdiction over their right to share in the distribution of the estate and waiving the

---

[18] 131 S.Ct. 2594 (2011).

[19] Dkt. 63.

right to trial by jury as to such issues.[20]  The first, second, and fourth causes of action in

Meyer and Pratt's Counterclaims and Crossclaims relate to the claims allowance process.

Meyer and Pratt have waived any right to jury trial they may have had as to these counts.

Their third cause of action is for a declaratory judgment against Christie as to ownership

of the Stock and control of the Debtor.  It is unlikely that there is a right to a jury trial on

this claim, since it does not request a legal remedy.  Their fifth cause of action alleges that

nondebtors Christie and Glenn made fraudulent transfers, that Meyer and Glenn are

entitled to void the transfers and levy execution on the assets transferred, and to an award

of punitive damages.  It is likely that there is a right to jury trial on this claim,[21] but it is not

the central issue of the Adversary Proceeding.

        The right to a jury trial has been recognized as cause for withdrawal of reference

because a bankruptcy court may not conduct a jury trial.  District of Kansas Local Rule

Local Rule 83.8.13 provides "a district judge shall conduct jury trials in all bankruptcy

cases and proceedings in which a party has a right to trial by jury, a jury is timely

demanded, and no statement of consent to jury trial before a bankruptcy judge has been

filed."  Meyer and Pratt requested a jury trial and have not consented to a trial by this

Court.  If that claim proceeds to trial, withdrawal of reference will be required.

---

[20] *Langenkamp v. Culp*, 498 U.S. 42, 44 (1953).

[21] *Granfinancieiera, S.A. v. Nordberg*, 492 U.S. 33 (1989).

### 2.  Uniformity of bankruptcy administration is not a factor.

Uniformity of bankruptcy administration is not a factor.  This Adversary Proceeding does not raise issues relating to administration of the case which are likely to arise in another case.

### 3.  Forum shopping is a consideration.

Forum shopping is definitely an issue.  Debtor's desire to have offset, entitlement to the Bond proceeds, and the right to the Stock decided by the bankruptcy court rather than the district court was a significant factor in filing both the bankruptcy case and the Adversary Proceeding.  The motion to withdraw reference is a response by Pratt to those actions; Pratt is seeking to restore the offset, Bond, and Stock issues to the district court.

 In many situations, such motivation by the movant would be a factor indicating the Motion to withdraw reference should be denied.  But in this case, since the Motion to withdraw the reference is in response to forum shopping by the Debtor, Pratt's desire to change the forum is of reduced importance.  Whether the Motion is granted or denied, the forum shopping tactic of one group of parties will be successful.

And, irrespective of the parties' motivations, granting the Motion would transfer issues which relate to the satisfaction of the Judgment to the court that entered the judgment.  But the withdrawal of reference would also require the district court to rule on matters which would directly impact the bankruptcy process, such as the allowance of claims.

**4.  Conservation of the parties' resources.**

Consolidation of all of the issues raised in the Adversary Proceeding in one court would be ideal.  But in this case, that is not procedurally possible.  If reference is withdrawn, the jurisdiction of the Adversary Proceeding would be in the district court. This would result in two cases between the same parties in district court: the Adversary Proceeding and the Federal Court Litigation.  And the bankruptcy case would remain pending in this court, with the same issues as raised in the Adversary Proceeding being relevant to the objections to claims and the Interpleader Proceeding.  If the reference is not withdrawn, issues concerning satisfaction of the Judgment will be pending in two courts. None of the parties have expressed a desire to cooperate to reduce duplicative claims or litigation.

It is difficult to predict whether conservation of Debtor's and the other parties' resources would be promoted by the withdrawal of reference.  If the Motion is granted, it is highly likely that the Christie Interests will continue to seek bankruptcy court resolution of issues which are identical or very similar to those in the Adversary Proceeding.  For example, the offset issue is raised in Debtor's objections to the proofs of claim filed by Meyer and Pratt.  Control of the bankruptcy proceeding in light of Meyer and Pratt's attempt to acquire the Stock and take control of the Debtor is likely to become an issue.

On the other hand, if the Motion is denied or withdrawal is delayed until the jury trial issues are ready for determination, it is likely that Meyer and Pratt will continue their

efforts in district court to enforce the Judgment against nondebtors Glenn and Christie. These efforts will likely involve offset, the Bond, and the Stock.

These considerations indicate that a ruling on the Motion will not be sufficient to bring order to this case.  To avoid duplicative actions in this Court and the district court, further orders to control the dockets will be required.

**5.  Expediting the bankruptcy process.**

Expediting the bankruptcy process, which the Court construes to mean expediting the Adversary Proceeding, is a factor.  There are two reasons why the bankruptcy court may not be able to enter a final order in the Adversary Proceeding.  The first is Meyer and Pratt's right to a jury trial on at least one of the claims alleged in their Counterclaims and Crossclaims.  This factor is discussed above.  The right to a jury trial has been recognized as cause for withdrawal of reference since the bankruptcy court may not conduct a jury trial.

The second reason is lack of authority of the bankruptcy court to enter a final judgment on the noncore claims in the Adversary Proceeding.  Although a bankruptcy court may enter final judgment on core matters, it cannot do so with respect to noncore matters, unless the parties consent.  Under 28 U.S.C. § 157(c)(1), a bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case  under Title 11.  But the bankruptcy judge must submit proposed findings of fact and conclusions

of law to the district court for entry of judgment after *de novo* review.  Nevertheless, the mere fact that a proceeding is noncore is not sufficient cause to grant the Motion.[22]

The limitation on a bankruptcy court's authority is presently the subject of much discussion because of the United States Supreme Court's recent decision in *Stern v. Marshall*.[23]  *Stern* held that despite the definition of core proceedings as including "counterclaims by the estate against persons filing claims against the estate,"[24] a bankruptcy court lacks the "constitutional authority to enter a final judgment on a state law counterclaim [filed by the debtor for tortious interference in an nondischageability adversary proceeding filed by a creditor]  that is not resolved in the process of ruling on a creditor's proof of claim."[25]  Constitutional authority to enter final judgment on such counterclaims is present if the "action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process."[26]

Pratt contends that under *Stern*, the bankruptcy court is precluded "from entering a final judgment on the Judgment Debtors' [defined to be Debtor, Christie, and Glenn] offset claim."  Debtor responds that "each of the matters at issue in the adversary case is a core

---

[22] *In re H & W Motor Express Co.*, 343 B.R. 208,  215 (N.D. Iowa 2006).

[23] 131 S. Ct. 2594 (2011).

[24] 28 U.S.C. § 157(a)(2)(C).

[25] *Stern*, 131 S. Ct. at 2630.

[26] *Id.* at 2618.

proceeding,"[27] and therefore the bankruptcy court may enter final judgment.[28]  There is no question that the claims alleged in the Debtor's Adversary Complaint against Meyer and Pratt are within the Court's core jurisdiction.  Meyer and Pratt filed a proof of claim; the allegations of the Adversary Complaint relate to claims allowance process.  But the Adversary Proceeding is complicated by the filing of state law crossclaims by Glenn and Christie, who are neither creditors nor bankruptcy debtors, against Meyer and Pratt, and by Meyer and Pratt's filing of state law Counterclaims and Crossclaims against Christie and Glenn.  The Court is not convinced that these are all core matters.

The extent of the lack of bankruptcy court authority to enter final judgment based upon *Stern* has not been defined in this circuit.  Some courts rely upon the language in *Stern,* emphasizing that the ruling should be limited to the unique circumstances of that case,[29] which involved only the definition of core proceedings in 28 U.S.C. § 157(b)(2)(C).  These courts hold that *Stern* does not impact the bankruptcy court's ability to enter a final judgment on any other type of core proceedings as defined by other subsections of §

---

[27] Dkt. 68 at 9.

[28] Debtor cites 28 U.S.C. § 157 (b)(2) (A), matters concerning administration of the estate, (B) allowance or disallowance of claims against the estate; (C) counterclaims by the estate against persons filing claims against the estate; (E) order to turnover property of the estate; (k) determination of the validity, extent, or priority of liens; and (O) other proceedings affecting the liquidation of the assets of the  estate or the adjustment of the debtor-creditor relationship.

[29] E.g., *In re Salander O'Reilly Galleries*, 453 B.R. 106, 115-116 (Bankr. S.D.N.Y. 2011).

157(b)(2).[30]   Other courts read *Stern* more expansively by looking to the reasoning of the

*Stern* court.[31]   They hold that the constitutional authority of bankruptcy courts is limited to

matters concerning the administration of the bankruptcy estate, the injunctions imposed by

the Bankruptcy Code, and to the administration of claims made against the estate, even if

those claims are matters usually handled by common law courts or courts of equity.[32]

Pratt has not identified the claims at issue in this Adversary Proceeding to which

the rationale of *Stern* may apply.   There is no counterclaim filed by the Debtor and

therefore no claim within the strict reading of *Stern*.   All the claims are determined by state

law and do not involve public rights.   The question is how many of them are necessarily

involved in the claims allowance process.   Given the defenses asserted to the claims of

Meyer and Pratt, it is clear that the claims process will involve adjudication of the

Adversary Complaint's challenges to the right of offset, validity of the assignments of the

Iowa judgments, the extent and priority of liens on the Judgment, and the entitlement to

the Bond proceeds.   Since the right to the Stock arises from efforts to satisfy the Judgment,

---

[30] *E.g., In re Peacock*, 455 B.R. 810, 812 (Bankr.  M.D. Fla.  2011) ( "The narrow holding in *Stern*, as just described, does not impact a bankruptcy court's ability to enter a final judgment in any other type of core proceeding authorized under 28 U.S.C. § 157(b)(2). Similarly, *Stern* does not impact a bankruptcy court's ability to hear non-core matters under 28 U.S.C. § 157(c), albeit not decide them absent the parties' consent").

[31] *E.g., In re Heller Herman LLP v. Arnold & Porter, LLP*, 464 B.R 348, 352-54  (N.D. Cal.  2011)(finding that *Stern's* holding of lack of jurisdiction to enter a final judgment applies to other core matters under § 157(b), including the estate's claim that a prebankruptcy waiver was a fraudulent conveyance).

[32] *E.g., Meoli v. The Huntingdon Nat'l Bank (In re Teleservices Group, Inc.)*, 456 B.R. 318, 337 (Bankr. W.D. Mi. 2011).

such rights may also be related to the claims allowance.  However, as plead, at least those aspects of  Meyer and Pratt's allegation of fraudulent conveyance against Christie and Glenn which do not involve the assignments of the Iowa Judgments to the Christie Interests appear to involve private, state law rights which will not be determined in the claims allowance process.  When  case law under *Stern* clarifies the issue, it is possible that this Court will conclude that only an Article III judge may have constitutional authority to enter final judgment on this claim, absent consent of the parties.

In any event, if *Stern* requires an Article III court to enter final judgment on any of the claims in this Adversary Proceeding, it is this Court's view that it would nevertheless have authority to preside over pretrial matters, to enter nonfinal judgments, and to make suggested findings of fact and conclusions of law, just as it does with respect to noncore "related to" proceedings under 28 U.S.C. § 157(c).[33]  To the extent that Pratt may be arguing that because of *Stern*, the bankruptcy court lacks subject matter jurisdiction over some of the state law claims and reference must be immediately withdrawn, the Court rejects this argument.  *Stern* was not concerned with subject matter jurisdiction.  It addressed the allocation of authority between the district courts and the bankruptcy

---

[33]  In so ruling, the Court rejects the suggestion in the Seventh Circuit Court of Appeals' decision in *Ortiz v. Aurora Health Care, Inc.(In re Ortiz)*, 665 F.3d 906 (7th Cir.  20111), which stated that if a matter arguably within 28 U.S.C. § 157(b)'s definitions of core proceedings is found to require final judgment by an Article III judge, the bankruptcy court cannot issue suggested findings of fact and conclusions of law because the matter also is  not a "related to" proceeding for purposes of 28 U.S.C. § 157(c), thereby creating a jurisdictional "no man's land."  Other courts have declined to follow this reasoning.  *E.g., In re Emerald Casino, Inc.*, 2012 WL 280724 *5 ( N.D. Ill. 2012); *Ortiz v. Aurora Health Care Inc.(In re Ortiz)*, 464 B.R. 807 (Bankr. E.D. Wi. 2011).

courts.[34] As with respect to "related to" matters and claims for which there is a right to a jury trial, the need for final adjudication by an Article III judge does not require immediate withdrawal of reference.

**CONCLUSION**

Cause exists to withdraw reference because there is a right to a jury trial on at least one claim asserted by Pratt.  The question is therefore when should reference be withdrawn.  Because the trial preparation for the nonjury and the jury claims will overlap and the jury trial claim is likely to be peripheral to the primary disputes, the Court recommends that withdrawal be delayed until the jury issues are well defined and ready for trial.  The relationship of the issues in this Adversary Proceeding to the issues in the Federal Court Litigation, make it impossible to use withdrawal of reference to confine the litigation of these issues to one court.  But, in this Court's view, initially leaving the Adversary Proceeding in this Court will best preserve judicial resources, since if withdrawal of reference were immediate, the claims resolution process and the Interpleader Proceeding would require this Court to consider the same issues as would be before the district court in the Adversary Proceeding.  To the extent possible, consistent with the preservation of the parties' rights, the parties are urged to refrain from litigating issues in the Federal Court Litigation which would be duplicative of the issues before this Court or could create a conflict in the rulings of the two courts.

---

[34] *Stern,* 113 S.Ct. at 2620.

Copies of the Complaint (dkt. 1), Glenn and Christie's Crossclaim (dkt. 47), and

Meyer and Pratt's Counterclaims and Crossclaims (dkt. 63) are attached.

### ###

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| DJ CHRISTIE, INC. | ) | |
| | ) | Case No. 11-40764-DLS-11 |
|     Debtor & Debtor-in-Possession. | ) | |
| | ) | |
| DJ CHRISTIE, INC. | ) | |
| | ) | |
|     Plaintiff & Debtor-in-Possession, | ) | |
| v. | ) | Adversary No. _____ |
| | ) | |
| ALAN E. MEYER, JOHN R. PRATT, | ) | |
| WASHINGTON INTERNATIONAL | ) | |
| INSURANCE COMPANY, | ) | |
| ALEXANDER W. GLENN & | ) | |
| DAVID J. CHRISTIE, | ) | |
| | ) | |
|     Defendants. | ) | |

**ADVERSARY COMPLAINT OF DJ CHRISTIE, INC.**

**COMES NOW** DJ Christie, Inc., by and through its attorneys, Stumbo Hanson, LLP, and for its

Adversary Complaint respectfully states:

**PARTIES**

1.     The Plaintiff, DJ Christie, Inc. ("Plaintiff") is a corporation authorized to do business in the state

of Kansas with its principal place of business at 9400 Reeds Road, Ste. 100, Overland Park, KS 66207. Plaintiff is

the debtor and debtor-in-possession in Case No. 11-40764 filed under Chapter 11 of U.S.C. Title 11.

2.     Alan E. Meyer ("Meyer") is a natural person residing at 605 Breconshire Lane, Coralville, IA

52241.

3.     John R. Pratt ("Pratt") is a natural person residing at 8334 Riverdale Lane, Davenport, FL 33896.

4.     Washington International Insurance Company ("Washington") is a New Hampshire Corporation

with its principal place of business located at 650 Elm Street, Manchester NH 03101.  Washington may be served

In the United States Bankruptcy Court for the District of Kansas
**In re *DJ Christie, Inc*.**
**Bankruptcy Case No. 11-40476-DLS-11**
*Adversary Complaint of DJ Christie, Inc.*
Page 2 of 5

with process by serving its registered agent Robert M. Solitro whose address is also 650 Elm Street, Manchester

NH 03101.

  5.  Alexander W. Glenn ("Glenn") is a natural person residing at 10777 Barkley St. Ste. 210,

Overland Park, KS 66211.

  6.  David J. Christie ("Christie") is a natural person residing at 2711 W. 69th St., Mission Hills, KS

66208.

### JURISDICTION AND VENUE

  7.  This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 157 and §

1334.  This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (E), (K) and (O).

  8.  Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

  9.  This adversary proceeding is commenced pursuant to Rule 7001 of the Federal Rules of

Bankruptcy Procedure.

### GENERAL ALLEGATIONS

  10.  On or about September 8, 2009, the U.S. District Court for the District of Kansas issued a final

judgment in the matter of *Meyer*, et al. v. *Christie*, et al. Case No. 07-2230-CM in favor of Meyer, Pratt and

Dovetail Builders 2, L.L.C. in the amount of $9,196,445.00, plus post-judgment interest at the rate of .18% and

costs (hereafter "Federal Judgment").

  11.  On March 15, 2011, the Tenth Circuit reduced the award of damages to Meyer and Pratt to

$7,170,603.00 and reversed the entry of judgment in favor of Dovetail.  On July 15, 2011, the Federal Judgment

was amended in accord with the remand entering judgment in favor of Meyer and Pratt against Plaintiff, Glenn

and Christie in the amount of $7,170,603.00 plus $100 in punitive damages plus post-judgment interest at the rate

of .18 percent and costs.  A true and correct copy of the Federal Judgment is attached hereto as Exhibit "A".

  12.  Plaintiff, Glenn and Christie are creditors of Meyer and Pratt by virtue of holding approximately

$7,543,500.40 in judgments originating in Iowa and currently registered in the District Court of Dickinson

In the United States Bankruptcy Court for the District of Kansas
**In re *DJ Christie, Inc.***
<u>**Bankruptcy Case No. 11-40476-DLS-11**</u>
*Adversary Complaint of DJ Christie, Inc.*
Page 3 of 5

County, Kansas (hereafter "Iowa Judgments"). The Iowa Judgments and related assignments are attached hereto as Exhibits "B" to "M" and incorporated herein by this reference.

13.     Washington is a necessary and interested party to this lawsuit by virtue of it having issued, as surety, a supersedes bond, Bond No. 9071367 dated January 20th, 2010 on behalf of Plaintiff, Glenn and Christie, with David J. Christie as principal and in favor of Meyer, Pratt and Dovetail Builders 2, L.L.C. in the amount of $1,125,000.00 as security for costs and charges awarded in in the matter of *Meyer*, et al. v. *Christie*, et al. Case No. 07-2230-CM. A true and correct copy of Bond No. 9071367 is attached hereto as Exhibit "N".

<b>FIRST CAUSE OF ACTION – DETERMINE VALIDITY, EXTENT AND PRIORITY OF<br><u>JUDGMENT LIENS HELD BY MEYER AND PRATT</u></b>

14.     Plaintiff repeats and re-alleges the allegations contained above in all prior paragraphs as through fully set forth herein.

15.     Title to Plaintiff's real property located in Wyandotte County, KS (approximately 1.47 acres at the Intersection of I-70 and 57th Street, Kansas City, Kansas, see Plaintiff's Schedule A to Voluntary Petition) is clouded by virtue of a judgment lien arising under K.S.A. § 60-2201 and § 60-2202 upon entry of the Federal Judgment. The cloud on title is burdensome to the bankruptcy estate because it prevents the bankruptcy estate from selling the real property with clear title.

16.     Plaintiff may setoff amounts owed to it by Meyer and Pratt by virtue of the Iowa Judgments against the full amount it owes Meyer and Pratt under the Federal Judgment leaving a net amount due from Meyer and Pratt to Plaintiff in excess of $300,000.00 without considering all accrued interest.

17.     Any purported judgment lien on Plaintiff's real property should be declared satisfied and released because the Federal Judgment may properly be satisfied in full by setoff against the amounts due under the Iowa Judgments.

WHEREFORE, Plaintiff respectfully prays that the Court enter a judgment against Meyer and Pratt declaring that any purported judgment lien on Plaintiff's real property is satisfied by setoff of the amounts due under the Federal Judgment against the amounts due under the Iowa Judgments.

In the United States Bankruptcy Court for the District of Kansas
**In re *DJ Christie, Inc*.**
<u>**Bankruptcy Case No. 11-40476-DLS-11**</u>
*Adversary Complaint of DJ Christie, Inc.*
Page 4 of 5

## SECOND CAUSE OF ACTION – DETERMINE ACCOUNTING OF AMOUNTS DUE<br>BETWEEN PLAINTIFF AND MEYER AND PRATT

18.     Plaintiff repeats and re-alleges the allegations contained above in all prior paragraphs as through fully set forth herein.

19.     Plaintiff may setoff amounts owed to it by Meyer and Pratt by virtue of the Iowa Judgments against the full amount it owes Meyer and Pratt under the Federal Judgment leaving a net amount due from Meyer and Pratt to Plaintiff in excess of $300,000.00 without considering all accrued interest.

20.     In as much as setoff will resolve all obligations owed by the Plaintiff to Meyer and Pratt, that a judgment should be entered that these obligations are satisfied by the setoff, and that the Bond No. 9071367 dated January 20th, 2010, provided by Defendant Washington should be cancelled and the surety released.

WHEREFORE, Plaintiff respectfully prays that the Court enter a judgment against Meyer and Pratt rendering an accounting of the amounts due between Meyer and Pratt and Plaintiff and ordering Meyer and Pratt to pay Plaintiff the amount due to Plaintiff under the Iowa Judgments except to the extent that such debt may be setoff against amounts owed to Meyer and Pratt by Plaintiff, plus interests to the date of payment,  an order of this court cancelling the supersedes bond and releasing Defendant Washington as surety and the costs of this action.

## THIRD CAUSE OF ACTION – TURNOVER OF PROPERTY OF THE ESTATE

21.     Plaintiff repeats and re-alleges the allegations contained above in all prior paragraphs as through fully set forth herein.

22.     The amounts due to Plaintiff from Meyer and Pratt under the Iowa Judgments are property of the bankruptcy estate.

23.     Pursuant to 11 U.S.C. § 542(b), Meyer and Pratt shall pay Plaintiff the amounts due Plaintiff under the Iowa Judgments except to the extent that such debt may be setoff under 11 U.S.C. § 553 against amounts owed to Meyer and Pratt by Plaintiff.

WHEREFORE, Plaintiff respectfully prays that the Court enter a judgment against Meyer and Pratt ordering them to pay Plaintiff the amount due to Plaintiff under the Iowa Judgments except to the extent that such

In the United States Bankruptcy Court for the District of Kansas
**In re *DJ Christie, Inc.*.**
**Bankruptcy Case No. 11-40476-DLS-11**
*Adversary Complaint of DJ Christie, Inc.*
Page 5 of 5

debt may be setoff against amounts owed to Meyer and Pratt by Plaintiff, plus interests to the date of payment and

the costs of this action.

                                        RESPECTFULLY SUBMITTED:

                                        STUMBO HANSON, LLP


                                        _____*s/ Tom R. Barnes II*
                                        TOM R. BARNES II, #13437
                                        2887 SW MacVicar Ave.
                                        Topeka, Kansas 66611
                                        (785) 267-3410; (785) 267-9516 Fax
                                        tom@stumbolaw.com
                                        Attorneys for DJ Christie, Inc.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

ALAN E. MEYER, and,       )
JOHN R. PRATT,            )
                          )
            Plaintiffs,   )
                          )
v.                        )
                          )        No. 07-2230-CM
                          )
DAVID J. CHRISTIE, and,   )
ALEXANDER GLENN, and,     )
D.J. CHRISTIE, INC.,      )
                          )
                          )
            Defendants.   )
_____)

### AMENDED JUDGMENT IN A CIVIL CASE

**Decision by Court.**   This action came to trial or hearing before the Court.  The issues have been tried or heard and a decision has been rendered.

      **IT IS ORDERED AND ADJUDGED** that pursuant to the Memorandum and Order filed on July 15, 2011, judgment is hereby entered in favor of plaintiffs Alan E. Meyer and John R. Pratt, and against defendants David Christie, Alexander Glenn, and D.J. Christie, Inc., in the amount of $7,170,603, plus $100 in punitive damages, plus post-judgment interest at the current rate of .18 percent, along with costs.

Date: July 15, 2011

                    TIMOTHY M. O'BRIEN
                    Clerk of the Court

                    By: s/ Jennifer Walton
                        Jennifer Walton, Deputy Clerk



EXHIBIT

A

tabbies®

IN THE IOWA DISTRICT COURT IN AND FOR MUSCATINE COUNTY

| | | |
|---|---|---|
| CENTRAL STATE BANK, | ) | NO. EQCV019396 |
| Plaintiff, | ) | |
| | ) | ENTRY OF IN REM AND IN PERSONAM |
| vs. | ) | JUDGMENTS AND FORECLOSURE |
| | ) | DECREE, WITHOUT REDEMPTION |
| RIVERBEND LAND | ) | |
| DEVELOPMENT, L.L.C., | ) | |
| JOHN R. PRATT and ALAN | ) | |
| MEYER, STANLEY, LANDE & | ) | |
| HUNTER, a professional | ) | |
| Corporation, UTILITY | ) | |
| EQUIPMENT CO., N.J. MILLER, | ) | |
| INC., HAHN READY-MIX, | ) | |
| CO., AND DAN AHRENS, | ) | |
| | ) | |
| Defendants. | ) | |

AND NOW on this 7ᵗʰ day of July, 2010, the Court is presented with this in rem and in personam judgment and Foreclosure Decree, without redemption. The Court notes that all parties who have appeared through Counsel have consented to the entry of the in rem and in personam judgment and Foreclosure Decree.

THE COURT FINDS that the Plaintiff has submitted the original promissory notes to the Clerk of Court on May 10, 2010. The original mortgage, assignment of rents and guaranty agreements executed by Daniel R. Ahrens, Alan Eugene Meyer and John R. Pratt were filed with the Clerk of Court on May 13, 2010. Accordingly, the Clerk of Court can docket the in rem and in personam judgments rendered herein pursuant to I.R. Civ. P. 1.961.

THE COURT FINDS that the Plaintiff, until the filing of the notes with the Muscatine County Clerk of Court, was the owner and holder of three promissory notes as follows, to-wit:

**EXHIBIT**

B

A.    Promissory Note No. 53249 dated December 10, 2007 in the original principal sum of $663,213.00. The balance due on Note 53249 as of July 7, 2010 is in the amount of $569,230.67. Interest accrues on the unpaid principal balance of $429,838.64 from and after July 7, 2010 at the rate of 18% per annum.

B.    Promissory Note No. 60350 dated December 10, 2007 in the original principal sum of $883,713.01. The balance due on Note 60350 as of July 7, 2010 is in the amount of $1,155,494.61. Interest accrues on the unpaid principal balance of $859,369.58 from and after July 7, 2010 at the rate of 18% per annum.

C.    Promissory Note No. 76703 dated December 10, 2007 in the original principal sum of $553,638.37. The balance due on Note 76703 as of July 7, 2010 is in the amount of $210,604.93. Interest accrues on the unpaid principal balance of $155,779.18 from and after July 7, 2010 at the rate of 18% per annum.

THE COURT FINDS that the three promissory notes came to be in default and were properly accelerated by the Plaintiff.

THE COURT FINDS that the three notes are all secured under a mortgage dated March 1, 2001 filed of record March 5, 2001 in the office of the Muscatine County, Iowa Recorder as File No. 2001-01261 encumbering the following net non-agricultural real estate, to-wit:

See attached Exhibit D2 which is incorporated herein by reference.

The real estate is not the homestead of any of the individually named Defendants.

THE COURT FINDS that the real estate is commercial in nature and use. The real estate is not agricultural in nature or use.

THE COURT FINDS that the three promissory notes were also secured by an assignment of rents dated March 1, 2001 filed of record March 5, 2001 in the office of

2

the Muscatine County, Iowa Recorder as File No. 2001-01262 encumbering the same real estate as is encumbered by the mortgage as is more particularly described above.

THE COURT FINDS that the aggregate balance due on the three notes as of July 7, 2010 is in the sum of $2,074,722.23 plus interest on the unpaid aggregate principal sum of $1,444,987.40 from and after July 7, 2010 at the rate of 18% per annum.

THE COURT FINDS that all of the Defendants' liens or interests, whether consensual or non-consensual, are junior and inferior to the mortgagee's lien of the Plaintiff.

THE COURT FINDS that the Plaintiff has expended abstracting fees in the amount of $400.00 plus incurred collection expenses, inclusive of attorney's fees, and excluding service fees and court costs advanced, in the sum of $11,018.99.  THE COURT FINDS the collection expenses and attorney's fees reasonable and accordingly will assess the same as court costs pursuant to Sections 625.22 and 625.25, Iowa Code and include them in the in rem and in personam judgments.

THE COURT FINDS that the Defendants, or any one or more of them, are not entitled to the protection of a defense pursuant to Rule 1.211 and are not under any legal disability, are not prisoners in a reformatory or penitentiary and are not in the military services of the United States of America, nor are the individual Defendants entitled to any other privileges under the provisions of the Servicemembers Civil Relief Act (SCRA), Title 50, United States Code, §501 et seq. effective December 19, 2003, as amended, if ever.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the Plaintiff, Central State Bank, have and recover an in rem judgment against the real estate

3

described on Exhibit D2 attached to this Decree in the amount of $2,074,722.23 plus interest on the unpaid aggregate principal sum of $1,444,987.40 from and after July 7, 2010 at the rate of 18% per annum plus $400.00 in abstracting charges plus $11,018.99 in attorney's fees and costs which are assessed as court costs pursuant to Sections 625.22 and 625.25, Iowa Code and for all other court costs.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Plaintiff recover an in personam/money judgment against the Borrower, Riverbend Land Development, L.L.C. and the three Guarantors, John R. Pratt, Alan Eugene Meyer and Daniel R. Ahrens, jointly and severally in the sum of $2,074,722.23 plus interest on the unpaid aggregate principal sum of $1,444,987.40 at the rate of 18% per annum from and after July 7, 2010 plus Plaintiff's collection expenses and attorney's fees in the amount of $11,018.99 plus court costs.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Plaintiff's mortgage described above be, and the same is hereby foreclosed against the real estate described on Exhibit D2, as against all Defendants named in this matter as concerns any interest claimed by any one or more of the Defendants, whether real, personal or mixed, and any other person or entity making claims to the foreclosed real estate through any one or more of the Defendants; that the foreclosed real estate be sold by the Muscatine County, Iowa Sheriff, without redemption and without delay of sale to satisfy the in rem judgment rendered herein or so much thereof as is actually realized at the time of Sheriff's sale; that a special execution issue upon Plaintiff's Counsel's request for the same and payment of the special execution fee to the Muscatine County Clerk of Court; that the Plaintiff's Counsel may request the issuance of a special execution at anytime

4

after the entry of this Order and in rem and in personam judgments; that the Clerk of Court docket the in rem and in personam judgments immediately giving the filing by the Plaintiff of the promissory notes, mortgage, assignment of rents and profits and guarantees as required by I.R. Civ. P. 1.961; and that upon Sheriff's sale, the Muscatine County Sheriff shall issue to the purchaser of said foreclosed real estate a Sheriff's Deed in and to the foreclosed real estate, without redemption of any nature or kind; that the Plaintiff may credit bid all or a portion of the in rem judgment at Sheriff's sale; that the in personam judgment rendered herein be reduced by the amount of the highest bid at Sheriff's sale whether the same be a third party cash bid or a bid of all or a portion of Plaintiff's in rem judgment; that the Muscatine County Sheriff pay over to the Muscatine County Clerk of Court any surplus bid proceeds realized at the time of Sheriff's sale above the Plaintiff's in rem judgment for condemnation of the same by any of the Defendants who have appeared and defended in this matter and that the priority of the Defendants' claims shall be determined by Iowa law; that a party wishing to condemn the surplus sale proceeds, if any, paid over by the Sheriff to the Muscatine County Clerk of Court must file an Application for Condemnation of the same and give notice of the Application to all other Defendants through their respective Counsel of record.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Court specifically reserves jurisdiction for the purpose of correcting defects or errors in title engendered by this foreclosure proceeding prior to or subsequent to Sheriff's sale upon application of the Plaintiff or owner of the Sheriff's Deed.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that this Court shall retain jurisdiction of the parties and of the real estate foreclosed hereunder for the

purpose of entering all proper and/or necessary orders to effectuate the findings and orders contained in this judgment and decree as may be equitable in the premises, including errors in the legal description or otherwise.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Receiver heretofore appointed remain the Receiver through the date of Sheriff's sale.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that no third person(s) or entity(ies) may obtain an interest in and to the real estate foreclosed hereunder after the filing of the Plaintiff's Petition in Equity for Foreclosure on September 9, 2009 and the indexing of the same by the Clerk of Court pursuant to §617.11, Iowa Code.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Plaintiff's counsel shall prepare and file an Affidavit of Foreclosure and record the same with the Muscatine County Recorder's Office, all in accordance of the provisions of §655.4, Iowa Code, as amended.

Clerk to notify.

JUDGE, 7th JUDICIAL DISTRICT OF
IOWA

APPROVED AS TO FORM
AND CONTENT:

Joseph C. Creen
5505 Victoria Avenue
Suite 100
Davenport, IA 52807
*Attorney for Defendant*
*N.J. Miller, Inc.*

PROOF OF SERVICE

The undersigned certifies that the foregoing instrument was served upon all parties to the above cause to each of the attorneys of record herein at their respective addresses disclosed on the pleadings on _____

By: ☑ U.S. Mail          ☐ FAX
    ☐ Hand Delivered      ☐ Overnight Courier
    ☐ Federal Express     ☐ Other:
Signature

6

Riverbend Land Development, LLC by
John Pratt, Managing Member

John Pratt, Individually

Dan Ahrens, Individually

Alan Meyer, Individually

Steven J. Havercamp
Stanley, Lande & Hunter, P.C.
900 US Bank Center
201 W 2nd Street
Davenport, IA 52801
*Attorney for Defendant Stanley,
Lande & Hunter, P.C.*

Duane Goedken
319 East Second St, Suite 301
Muscatine, IA 52761
*Attorney for Defendant Hahn
Ready-Mix, Co.*

Michael R. Coryn
Utility Equipment Co.
3739 State Street
Bettendorf, IA 52722
*Attorney for Utility Equipment Co.*

C:\Client files 6-1-01\Central State Bank, Riverbend Land\Pleadings\ORDER AND DECREE.doc

7

_____
Jason Palmer
Suite 3700, 801 Grand Ave
Des Moines, IA 50309-8004
*Attorney for Defendant*
*John R. Pratt*


_____
Alex Johnson
Suite 2000, 666 Grand Avenue
Des Moines, IA 50309-2510
*Attorney for Defendant*
*Riverbend Land Development, LLC,*
*Alan Meyer and Dan Ahrens*


_____
Steven J. Havercamp
Stanley, Lande & Hunter, P.C.
900 US Bank Center
201 W 2nd Street
Davenport, IA 52801
*Attorney for Defendant Stanley,*
*Lande & Hunter, P.C.*


_____
Duane Goedken
319 East Second St, Suite 301
Muscatine, IA 52761
*Attorney for Defendant Hahn*
*Ready-Mix, Co.*

_____
Michael R. Coryn
Utility Equipment Co.
3739 State Street
Bettendorf, IA 52722
*for Utility Equipment Co.*

*C:\Client files 6-1-01\Central State Bank, Riverbend Land\Pleadings\ORDER AND DECREE.doc*

Jason Palmer
Suite 3700; 801 Grand Ave
Des Moines, IA 50309-8004
*Attorney for Defendant*
*John R. Pratt*

Alex Johnson
Suite 2000, 666 Grand Avenue
Des Moines, IA 50309-2510
*Attorney for Defendant*
*Riverbend Land Development, LLC,*
*Alan Meyer and Dan Ahrens*

Steven J. Havercamp
Stanley, Lande & Hunter, P.C.
900 US Bank Center
201 W 2nd Street
Davenport, IA 52801
*Attorney for Defendant Stanley,*
*Lande & Hunter, P.C.*

Duane Goedken
319 East Second St, Suite 301
Muscatine, IA 52761
*Attorney for Defendant Hahn*
*Ready-Mix, Co.*

Michael R. Coryn
Utility Equipment Co.
3739 State Street
Bettendorf, IA 52722
*Attorney for Utility Equipment Co.*

*C:\Client files 6-J-01\Central State Bank, Riverbend Land\Pleadings\ORDER AND DECREE.doc*

7

Riverbend Land Development, LLC by
John Pratt, Managing Member

John Pratt, Individually

Dan Ahrens, Individually                        Dan Ahrens

Alan Meyer, Individually

Steven J. Havercamp
Stanley, Lande & Hunter, P.C.
900 US Bank Center
201 W 2nd Street
Davenport, IA 52801
*Attorney for Defendant Stanley,
Lande & Hunter, P.C.*

Duane Goedken
319 East Second St, Suite 301
Muscatine, IA 52761
*Attorney for Defendant Hahn
Ready-Mix, Co.*

Michael R. Coryn
Utility Equipment Co.
3739 State Street
Bettendorf, IA 52722
*Attorney for Utility Equipment Co.*

C:\Client files 4-1-01\Central State Bank, Riverband Land\Pleadings\ORDER AND DECREE.doc

7

/S/
Riverbend Land Development, LLC by
John Pratt, Managing Member

/S/
John Pratt, Individually

/S/
Dan Ahrens, Individually

_Alan Meyer, Individually_

/S/
Steven J. Havercamp
Stanley, Lande & Hunter, P.C.
900 US Bank Center
201 W 2nd Street
Davenport, IA 52801
_Attorney for Defendant Stanley,_
_Lande & Hunter, P.C._

/S/
Duane Goedken
319 East Second St, Suite 301
Muscatine, IA 52761
_Attorney for Defendant John_
_Ready-Mix, Co._

/S/
Michael R. Coryn
Utility Equipment Co.
3739 State Street
Bettendorf, IA 52722
_Attorney for Utility Equip. Co._

CAClient files b-t-ET\Central State Bank - Riverband Land\Pleadings\ORDER AND DECREE.doc

7

_____

Jason Palmer
Suite 3700, 801 Grand Ave
Des Moines, IA 50309-8004
*Attorney for Defendant*
*John R. Pratt*

_____

Riverbend Land Development, LLC by
John Pratt, Managing Member

_____

John Pratt, Individually

_____

Dan Ahrens, Individually

_____

Alan Meyer, Individually

_____

Steven J. Havercamp
Stanley, Lande & Hunter, P.C.
900 US Bank Center
201 W 2nd Street
Davenport, IA 52801
*Attorney for Defendant Stanley,*
*Lande & Hunter, P.C.*

_____

Duane Goedken
319 East Second St, Suite 301
Muscatine, IA 52761
*Attorney for Defendant Hahn*
*Ready-Mix, Co.*

_____

Michael R. Coryn
Utility Equipment Co.
3739 State Street
Bettendorf, IA 52722
*Attorney for Utility Equipment Co.*

*C:\Client files 6-1-01\Central State Bank, Riverbend Land\Pleadings\ORDER AND DECREE.doc*

7

Re:   A parcel of land located in the Southeast Quarter of the
      Southeast Quarter of Section 21, the Southwest Quarter of the
      Southwest Quarter of Section 22, and the Northeast Quarter of
      Section 28, Township 77 North, Range 2 West of the 5th P.M.,
      City of Muscatine, Muscatine County, Iowa, more particularly
      described as follows:  Beginning at the Northeast Corner of
      Section 28; thence South 00° 57′ 30″ East 1695.13 feet along
      the East line of Section 28 to the Northeast Corner of Shield
      Subdivision; thence South 89° 05′ 30″ West 100.44 feet along
      the North line of Shield Subdivision; thence North 70° 52′ 47″
      West 999.92 feet along said North line to the Northwest Corner
      of Shield Subdivision; thence South 19° 07′ 58″ West 195.36
      feet along the West line of Shield Subdivision to the Southwest
      Corner of Shield Subdivision and the Easterly right of way of
      Mulberry Avenue and the beginning of a 527 foot radius curve
      concave Northeasterly whose 315.24 foot chord bears North 46°
      10′ 16″ West; thence Northwesterly along said curve an arc
      distance of 320.13 feet; thence North 28° 46′ 07″ West 625.70
      feet along said Easterly right of way; thence North 23° 14′ 53″
      West 304.62 feet along said right of way to the Southerly right
      of way of U.S. Highway #61; thence North 69° 04′ 00″ East
      1923.68 feet along said Southerly right of way; thence North
      81° 38′ 45″ East 300.44 feet along said right of way; thence
      North 57° 41′ 31″ East 202.04 feet along said right of way;
      thence North 76° 36′ 02″ East 469.96 feet along said right of
      way; thence South 00° 08′ 29″ West 441.64 feet to the South
      line of Section 22; thence North 89° 57′ 42″ West 991.13 feet
      along said North line to the point of beginning.  Said parcel
      contains 55.324 acres, and is subject to easements of record,
      and is shown on a plat of survey dated March 6, 1998, and
      recorded as Document No. 1998-7554 in the Muscatine County
      Recorder's office.

      ALSO, a parcel of land located in the Southwest Quarter of
      Section 22, and the Northwest Quarter of Section 27, Township
      77 North, Range 2 West of the 5th P.M., in the City of
      Muscatine, Muscatine County, Iowa, more particularly described
      as follows: Beginning at the Northwest Corner of said Section
      27; thence South 89° 57′ 42″ East (assured bearing) 1015.93

feet on the North line of the Northwest Quarter of said Section 27; thence North 81° 44′ 20″ East 424.63 feet; thence North 74° 44′ 24″ East 132.62 feet; thence North 80° 18′ 43″ East 343.36 feet to the Westerly right of way of Tipton Road; thence South 27° 55′ 36″ East 232.76 feet on said right of way; thence South 29° 51′ 00″ West 1533.75 feet; thence South 29° 40′ 32″ West 51.75 feet; thence South 27° 18′ 08″ West 334.38 feet; thence South 01° 11′ 03″ West 196.19 feet to the Northeast Corner of Mulberry Heights Addition; thence North 82° 21′ 23″ West 604.59 feet on the North line of Mulberry Heights Addition; thence North 82° 22′ 48″ West 60.20 feet; thence North 82° 21′ 01″ West 86.83 feet; thence North 01° 00′ 38″ West 338.48 feet; thence North 00° 56′ 22″ West 92.84 feet; thence South 89° 03′ 38″ West 289.40 feet to the West line of Section 27; thence North 00° 57′ 30″ West 1394.87 feet along said West line to the point of beginning.  Said parcel contains 62.623 acres and is subject to easements of record, and is shown on a plat of survey dated January 20, 1998, and recorded as Document No. 1998-7553 in the Muscatine County Recorder's office.

EXCEPT therefrom the following:

1.  Parcel D, per plat of survey recorded as Document No. 1998-6609, in the Muscatine County Recorder's office.

2.  Henderson Drive and Marseilles Court.

3.  Lot 1, of Paris Woods, Brittany Region – Phase One, a subdivision in the City of Muscatine, in Muscatine County, Iowa.

4.  That part conveyed by Warranty Deed recorded as Document No. 2000-02346, in the office of the Recorder of Muscatine County, Iowa.

5.  Lots 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, and Outlot A, of Riverbend First Addition to the City of Muscatine, in Muscatine County, Iowa.

6.  Lots 24, 26, 27, 28, 29, 35, 37, 38, 39, of Riverbend Second Addition to the City of Muscatine, in Muscatine County, Iowa.

7.  Riverbend Third Addition to the City of Muscatine, in Muscatine County, Iowa.

8.  Lots 1, 2, 3, and 4, of Riverbend Fourth Addition to the City of Muscatine, in Muscatine County, Iowa.

9.  Lots 1 and 2, of Riverbend Fifth Addition to the City of Muscatine, in Muscatine County, Iowa.

10. Units A, B, C, D, E, F, G, H, I, J, K and L, in Building 1;
    Units A, B, C, D, E, F, G, H, I, J, K and L, in Building 2;
    Units A, B, C, D, E, F, G, H, I, J, K and L, in Building 3;
    Units A, B, C, D, E, F, G, H, I, J, K and L, in Building 4;
    Units A, B, C, D, E, F, G, H, I, J, K and L, in Building 5;
    Units A, B, C, D, E, F, G, H, I, J, K and L, in Building 6;

Units A, B, C, D, E, F, G, H, I, J, K and L, in Building 7;
Units A, B, C, D, E, F, G, H, I, J, K and L, in Building 8;
Units A, B, C, D, E, F, G, H, I, J, K and L, in Building 9;
Units A, B, C, D, E, F, G, H, I, J, K and L, in Building 10;
Units A, B, C, D, E, F, G, H, I, J, K and L, in Building 11;
Units A, B, C, D, E, F, G, H, I, J, K and L, in Building 12;
Units A, B, C, D, E, F, G, H, I, J, K and L, in Building 13;
Units A, B, C, D, E, F, G, H, I, J, K and L, in Building 14;
Units A, B, C, D, E, F, G, H, I, J, K and L, in Building 15;
all in Part 1, of Riverbend Condominiums, a horizontal property
regime in Muscatine, Muscatine County, Iowa, established by a
Condominium Declaration dated November 6, 2001, and recorded as
Document No. 2001-08621, in the Muscatine County Recorder's
office.

Also, an undivided 1/180 fractional interest in and to the
Common Elements and Limited Common Elements appurtenant to each
Unit, as described in the Condominium Declaration, subject to
the rights reserved in and final adjustment as provided in
paragraphs 2.3 and 10.3 of the Condominium Declaration, which
final adjustment may increase or decrease such fractional
interest.

All subject to the easements, restrictions, covenants, rights,
obligations, encumbrances, and all other terms and conditions
of the Condominium Declaration, and the Articles of
Incorporation and By-laws of Riverbend Condominium Association,
an Iowa nonprofit corporation.

## ASSIGNMENT OF JUDGMENT

For and in consideration of Ten Dollars ($10.00) and other valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Central State Bank ("Assignor"), hereby transfers, assigns and sets over, without recourse, unto DJ Christie, Inc., a Kansas corporation, David J. Christie and Alexander W. Glenn (collectively, "Assignee"), all of Assignor's right, title and interest in and to that certain litigation, including, without limitation, that certain Entry of In Rem and In Personam Judgments and Foreclosure Decree, without Redemption dated July 7, 2010 entitled Central State Bank, Plaintiff vs. Riverbend Land Development, LLC, John R. Pratt, Alan Meyer, Stanley, Lande & Hunter, a professional corporation, Utility Equipment Co., N.J. Miller, Inc., Hahn Ready-Mix, Co. and Dan Ahrens, Defendants, Case No. EQCV019396 filed in the Iowa District Court in and for Muscatine County ("Judgment"). Assignor represents that it has not previously pledged, or otherwise conveyed, any right, title, or interest in the Judgment, and that no person or entity other than Assignor has any rights in the Judgment and any judgments therefrom. Assignor represents and warrants that it has collected part of the judgment and that Assignee's rights with respect to the in personam judgment are limited to collect the remaining unpaid portion of the judgment, in the approximate amount of $1,813,972.56 inclusive of unpaid interest and costs.

IN WITNESS WHEREOF, Assignor has executed this Assignment this 29th day of April, 2011.

**ASSIGNOR**

CENTRAL STATE BANK

By: _Denn Eckhardt_____

Name: Dennis Eckhardt
Title: Executive Vice President Senior Loan Officer

**EXHIBIT**

tabbies

C

## IN THE IOWA DISTRICT COURT IN AND FOR JOHNSON COUNTY

|  |  |  |
|---|---|---|
| BANKERS TRUST COMPANY, N.A., | ) | Equity No. EQCV 71091 |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **DECREE OF FORECLOSURE** |
| DOVETAIL DEVELOPMENT GROUP, | ) | **AND JUDGMENT ENTRY** |
| INC., CENTRAL FLORIDA | ) | **ORDER** |
| VENTURES, L.L.C., DANIEL R. | ) | |
| AHRENS, JOHN R. PRATT, ALAN E. | ) | |
| MEYER, and PARTIES IN | ) | |
| POSSESSION, | ) | |
| | ) | |
| Defendants. | ) | |

On August 26, 2010, the Court granted Plaintiff's Renewed Motion for

Summary Judgment in part, as to the issue of liability on the part of Defendants

for the principal sum due and owing under the terms of the note.  Plaintiff has

requested that a more detailed Decree be entered to allow the foreclosed real

estate to be sold at sheriff's sale.

The Court FINDS:

1.  Plaintiff is entitled to judgment in rem against the real estate

described in Plaintiff's Petition against each and all of the Defendants, a

judgment in personam against the Defendants, Dovetail Development Group,

Inc., Central Florida Ventures, L.L.C., Daniel R. Ahrens, John R. Pratt and Alan E.

Meyer, and to a decree of foreclosure, all as prayed in Plaintiff's Petition.

THEREFORE, upon Plaintiff filing with the Clerk of Court the original first

mortgage note and the original mortgages on which this action is based, copies of

EXHIBIT

D

which are attached to Plaintiff's Petition, judgment in rem against all Defendants,

and in addition a judgment in personam against the Defendants, Dovetail

Development Group, Inc., Central Florida Ventures, L.L.C., Daniel R. Ahrens,

John R. Pratt and Alan E. Meyer, and Decree of Foreclosure is rendered and

entered in accordance with the following Findings of Fact, Conclusions of Law

and Decree.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that a judgment

in rem is rendered in favor of the Plaintiff against the real estate and the

Defendants, and a judgment in personam in favor of the Plaintiff and against the

Defendants, Dovetail Development Group, Inc., Central Florida Ventures, L.L.C.,

Daniel R. Ahrens, John R. Pratt and Alan E. Meyer, for the principal amount of

$2,789,146.80.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that said

judgment be and the same is hereby declared to be a lien upon the following

described real estate, to-wit:

> That part of the Northeast Quarter of the Southwest Quarter of Section
> 28, Township 80 North, Range 6 West of the 5th P.M., City of Coralville,
> Johnson County, Iowa, lying East of Pembrokeshire Drive, South of
> Welsh Village First Addition Part Two, and South of Barrington Heights
> First Addition

> Also, the part of the Southeast Quarter of the Southwest Quarter of said
> Section 28 lying East of Welsh Village First Addition Part Five,
> Southeasterly of Welsh Village First Addition Part 6, and East of Gold's
> Gym Subdivision.

(the *"East of Gold's Gym Property"*),

- and -

**Units 6, 7, 8, 23, 24, 31, 38, 39, 40, 41 and 42, Westminster Circle Condominiums, according to the Declaration thereof recorded in Book 3706, Page 641, Records of the Recorder of Johnson County, Iowa**

Said property is also described as:

**Apartments 6, 7, 8, 23, 24, 31, 38, 39, 40, 41 and 42, in a horizontal property regime known as Westminster Circle Condominiums, a condominium, Coralville, Iowa, together with an undivided percentage interest in and to the common areas and facilities appurtenant thereto, all as appears of record and on land described in the Declaration recorded in the Office of the County Recorder, Johnson County, Iowa, on March 12, 2004 in Book 3706, Page 641, as may be amended**

(the *"Westminster Circle Property"*)

- and -

**Outlot A and Outlot B of Dovetail Estates - Part 6, according to the plat recorded in Plat Book 46, page 314, Johnson County Recorder's office, Iowa City, Iowa, except that portion thereof now described as Lot 1 of Dovetail Estates Part 7, Coralville, Iowa**

Said property is also described as:

**Outlot "B", Dovetail Estates Part 6, Coralville, Iowa, according to the plat thereof recorded in Book 46, Page 314, Plat Records of Johnson County, Iowa, and Outlot "A", Dovetail Estates Part 7, Coralville, Iowa, according to the plat thereof recorded in Book 49, Page 79, Plat Records of Johnson County, Iowa,**

(the *"Dovetail Estates Property"*),

from January 31, 2005, until said Mortgage is fully satisfied, said Mortgage being

recorded in Book 3839 at Page 940 of the Johnson County Recorder's Office, and

3

the Mortgage recorded June 25, 2007 in Book 4177 at Page 973 of the Johnson County Recorder's Office.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the said Mortgages declared upon be, and the same are hereby foreclosed; that the right, title and interest of the Plaintiff in and to said mortgaged premises be and they are hereby declared prior and superior to the right, title and liens or interests of the Defendants, or any of them, in and to said mortgaged real estate.

IT IS FURTHER ORDERED that special execution issue for the immediate sale of said real estate above-described together with all improvements thereon, for the purposes of paying the judgment herein rendered in favor of the Plaintiff, and that thereunder said real estate, or so much thereof as is necessary be sold to satisfy the Plaintiff's judgment; that if said property does not sell for a sufficient amount to pay this judgment that a personal judgment be entered against the Defendants, Dovetail Development Group, Inc., Central Florida Ventures, L.L.C., Daniel R. Ahrens, John R. Pratt and Alan E. Meyer for the deficiency and general execution issue for said deficiency; that from and after the sale under said special execution, Defendants, and each of them, and all persons claiming by, through or under them, are forever cut off, barred and foreclosed of all right, title, lien and interest to said mortgaged premises.

IT IS FURTHER ORDERED that a Sheriff's Deed issue immediately to the purchaser of the mortgaged premises conveying to the purchaser absolute title to

4

the mortgaged premises; that upon the demand of the purchaser, a Writ of

Possession shall be issued under the seal of the Court directed to the Sheriff of

Johnson County, Iowa, commanding him to put the purchaser at said sale or his

successor in interest into immediate and absolute possession of the mortgaged

premises pursuant to Iowa Code §654.20; and that Defendants shall have no right

of redemption following the sale as provided in Iowa Code §654.23.

IT IS FURTHER ORDERED that the Court shall retain jurisdiction in this

matter for the purpose of (a) considering any application from the court-

appointed receiver, including without limitation any application regarding fees

of the receiver or its attorney and any application regarding the disposition of the

proceeds of the receivership, (b) to produce merchantable title in the buyer at the

sheriff's sale, (c) to deal with any necessary matters, including but not limited to

the distribution of any surplus or any other matter pertaining to the foreclosure

sale and (d) the hearing scheduled for November 3, 2010 at 9:00 a.m. at the

Johnson County Courthouse, at which time the Court will consider Defendants'

argument that there are fact disputes pertaining to the amount of interest, late

fees, abstract costs and attorney fees claimed by Plaintiff and additional

judgment amounts may be entered after said hearing.

Dated this 2 day of Sept 2010.

_____
Judge, Sixth Judicial District of Iowa

L. Vern Robinson

Clerk to notify.

9-3-10 cc: S. Havercamp &
L. Hartman

5

## ASSIGNMENT OF JUDGMENT

For and in consideration of Ten Dollars ($10.00) and other valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Bankers Trust Company ("Assignor"), hereby transfers, assigns and sets over unto DJ Christie, Inc., a Kansas corporation, David J. Christie and Alexander W. Glenn (collectively, "Assignee"), all of Assignor's right, title and interest in and to that certain litigation, including, without limitation, that certain Decree of Foreclosure and Judgment Entry Order dated September 2, 2010, and filed on September 3, 2010 and that certain Order dated November 3, 2010 and filed on November 3, 2010, entitled Bankers Trust Company, N.A., Plaintiff, vs. Dovetail Development Group, Inc., Central Florida Ventures, L.L.C., Daniel R. Ahrens, John R. Pratt, Alan E. Meyer, and Parties In Possession, Defendants, Case No. EQCV071091 filed in the Iowa District Court in and for Johnson County ("Judgment"). Assignor represents that it has not previously pledged, or otherwise conveyed, any right, title, or interest in the Judgment, and that no person or entity other than Assignor has any rights in the Judgment and any judgments therefrom. Assignor represents and warrants that it has collected part of the judgment and that Assignee's rights with respect to the judgment are limited to collect the remaining unpaid portion of the judgment, which as of May 3, 2011 is in the approximate amount of $2,977,852.76 including unpaid interest and costs.

IN WITNESS WHEREOF, Assignor has executed this Assignment this ___4th___ day of May, 2011.

**ASSIGNOR**


Bankers Trust Company

By: _____

Name: Patrick Deignan

Title: Executive Vice President

**EXHIBIT**

E

IN THE IOWA DISTRICT COURT FOR JOHNSON COUNTY

| | |
|---|---|
| BANK OF THE WEST, SUCCESSOR-IN-INTEREST TO COMMERCIAL FEDERAL BANK, | Law No. EQCV070814 |
|     Plaintiff, | |
| v. | |
| SUPERIOR PRODUCT DISTRIBUTION, L.L.C., f/k/a DOVETAIL PRODUCT DISTRIBUTION, L.L.C.; ALAN E. MEYER; and JOHN PRATT, | **ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND JUDGMENT AND DECREE OF FORECLOSURE** |
|     Defendants. | |

BE IT REMEMBERED that on this ___21ST___ day of June, 2010, this Order Granting Plaintiff's Motion for Summary Judgment and Judgment and Decree of Foreclosure ("**Judgment and Decree**") came on before the Court. The Court notes that said Judgment and Decree has been prepared by attorney Thomas H. Burke of the law firm of Whitfield & Eddy, P.L.C., 317 Sixth Avenue, Suite 1200, Des Moines, Iowa 50309-4195, as attorneys for Plaintiff, Bank of the West, successor-in-interest to Commercial Federal Bank (hereinafter referred to as the "**Lender**").

The Court further notes that this Judgment and Decree has been submitted to the Court, along with the Notice of Filing of Original Promissory Note and the Affidavit of Lost Instruments as to the Guaranties (as hereinafter defined), following the hearing before the Court on the Lender's Motion for Summary Judgment which was filed herein on April 19, 2010 and further came on before the Court on May 27, 2010.

EXHIBIT

F

The Court, having examined the file and reviewed the record, now hereby makes the following:

## FINDINGS OF FACT

A.   FACTUAL BACKGROUND - PARTIES

1.     Lender is a banking corporation organized and existing under the laws of the State of California and is authorized to and does transact banking business in the State of Iowa.

2.     Borrower was and is, at all material times herein, an Iowa limited liability company with, for the purposes of this action, having its principal place of business in Johnson County, Iowa.

3.     Meyer was and is, at all material times herein, an individual residing in North Liberty, Johnson County, Iowa.

4.     Pratt was, at all material times herein, an individual residing in North Liberty, Johnson County, Iowa and currently residing in Davenport, Florida.

B.   FACTUAL BACKGROUND – PROMISSORY NOTE, GUARANTIES AND SECURITY AGREEMENT

5.     In consideration of monies loaned to the Borrower, on or about April 1, 2005, Borrower made, executed and delivered in favor of Lender that certain promissory note in the initial principal sum of Two Hundred Fifty Thousand Dollars and No Cents ($250,000.00) (hereinafter referred to as the "**Promissory Note**") with interest thereon at the initial rate of 7.250% per annum, all as set forth in the promissory note, as modified by that certain Change in Terms Agreement, dated June 27, 2005.  A true and accurate copy of the Promissory Note, showing the signature of the Borrower, is attached hereto marked as Exhibits "A," and by this reference incorporated herein.

6.     On or about April 1, 2005, Meyer and Pratt each made, executed, and delivered in favor of Lender their written guaranty (hereinafter collectively referred to as the "**Guaranties**" and individually as a "**Guaranty**") of the obligations of the Borrower to the Lender.   A true and accurate copy of the Guaranty given by Meyer is attached hereto, marked as Exhibit "B" and by this reference incorporated herein.   A true and accurate copy of the Guaranty given by Pratt is attached hereto, marked as Exhibit "C" and by this reference incorporated herein.   By their respective terms, the Guaranties obligate Meyer and Pratt for all amounts due and owing to the Lender by the Borrower.

7.     By their respective terms, the "unlimited" Guaranties "absolutely and unconditionally" obligate Meyer and Pratt for all amounts due and owing to the Lender by the Borrower.

8.     Specifically, the "unlimited" Guaranties provide that Meyer and Pratt "absolutely and unconditionally guarantees and promises to pay to [Lender] or its order, in legal tender of the United State of America, the Indebtedness (as that term is defined below) of [Borrower] to Lender on the terms and conditions set forth in this Guaranty.  Under this Guaranty, the liability of Guarantor is unlimited and the obligations of Guarantor are continuing." The Guaranties continue on to state:

> This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all Indebtedness incurred or contracted before receipt by Lender shall have been fully and finally paid and satisfied and all of Guarantor's other obligations under this Guaranty shall have been performed in full.

- 3 -

9.     In order to further secure payment of the Promissory Note, the Borrower made, executed and delivered in favor of Lender on or about June 27, 2005 that certain security agreement (hereinafter referred to as the **"Security Agreement"**).   A true and accurate copy of the Security Agreement, showing the signature of the Borrower, is attached hereto, marked as Exhibit "E" and by this reference incorporated herein.

10.     By its terms, the Security Agreement secures all amounts due and owing under the Promissory Note and granted to Lender a security interest in the following personal property of the Borrower:

> *All inventory, equipment, accounts (including but not limited to all health-care-insurance receivables), chattel paper, instruments (including but not limited to all promissory notes), letter-of-credit rights, letters of credit, documents, deposit accounts, investment property, money, other rights to payment and performance, and general intangibles (including but not limited to all software and all payment intangibles); and all attachments, accessions, accessories, fittings, increases, tools, parts, repairs, supplies, and commingled goods relating to the foregoing property; and all additions, replacements of and substitutions for all or any part of the foregoing property; all insurance refunds relating to the foregoing property; all good will relating to the foregoing property; all records and data and embedded software relating to the foregoing property, and all equipment, inventory and software to utilize, create, maintain and process any such records and data on electronic media; and all supporting obligations relating to the foregoing property; all whether now existing or hereafter arising, whether now owned or hereafter acquired or whether now or hereafter subject to any rights in the foregoing property; and all products and proceeds (including but not limited to all insurance payments) of or relating to the foregoing property*

(hereinafter referred to as the "**Personal Property**").

11.     The Lender properly perfected its security interest in the Personal Property by filing a UCC financing statement on April 13, 2005, in the Office of the Iowa Secretary of State as Instrument #E672695, as amended by Instrument Nos. E686670 and X061794.   True and

accurate copies of such filings are attached hereto, marked as Exhibit "F" and by this reference made a part hereof.

12. Finally, the same day Lender and/or Meyer and Pratt executed the Promissory Note and/or Guaranties, the Borrower, Meyer and Pratt executed a Notice of Final Agreement. A true and accurate copy of the Notice of Final Agreement is attached hereto and marked as Exhibit "G," and by this reference incorporated herein.

13. The Notice of Final Agreement provides:

**IMPORTANT: READ BEFORE SIGNING, THE TERMS OF THE LOAN AGREEMENT SHOULD BE READ CAREFULLY BECAUSE ONLY THOSE TERMS IN WRITING ARE ENFORCEABLE. NO OTHER TERMS OR ORAL PROMISES NOT CONTAINED IN THE WRITTEN LOAN AGREEMENT MAY BE LEGALLY ENFORCED. BORROWER MAY CHANGE THE TERMS OF THE LOAN AGREEMENT ONLY BY ANOTHER WRITTEN AGREEMENT.**

(emphasis in original).

14. The Lender took the (i) Promissory Note and Security Agreement from the Borrower and (ii) the Guaranties from the Guarantors in good faith, for valuable consideration and without notice, actual or constructive, of any outstanding rights hostile to the rights of said Defendants or circumstances that would lead Lender to inquire concerning such hostile rights.

15. By its terms the Promissory Note matured on April 3, 2010.

16. The Promissory Note is in default because of the failure of Borrower to comply with or to perform when due all terms, obligations, covenants and conditions contained in the Promissory Note, as well as the failure of Borrower to pay the Promissory Note, when due, pursuant to its terms and provisions.

17.     Lender sent to the Borrower a notice of default and demand for payment, dated February 11, 2009 (hereinafter referred to as the "**Notice**").[1]

> Pursuant to the terms of the Note, after the occurrence of an event of default, the Bank is entitled to increase the interest rate on the Note to 12.25%. The Bank has chosen to exercise this right. This rate became effective from January 4, 2009 until all amounts outstanding are paid in full.

18.     Lender is the holder of the Promissory Note and is entitled to payment thereon as such holder. In addition, pursuant to the terms and provisions of the Promissory Note and Guaranties, Lender is entitled to reasonable attorney's fees and all costs of collection from Borrower, Meyer and Pratt.

19.     Additionally, Lender has incurred and will continue to incur, attorney's fees and expenses in connection with the collection of the amounts due under the Promissory Note.

20.     As of April 16, 2010, there is past due and owing on the Promissory Note the unpaid principal amount of Seventy-Six Thousand, Three Hundred Ninety-Six Dollars and Thirty-Nine Cents ($76,396.39), accrued interest in the amount of Twelve Thousand Sixty-Six Dollars and Four Cents ($12,066.04) (which includes default interest), late charges in the amount of Four Thousand Two Hundred Forty-Three Dollars and Ninety-Nine Cents ($4,243.99), plus interest accruing at the default rate of 12.25% per annum from and after April 16, 2010 (currently $25.9959 per diem), plus attorney's fees and costs.

21.     Lender has incurred and continues to incur attorneys fees and expenses.

22.     Commercial Federal Corporation, a Nebraska corporation ("CFC"), Commercial Federal Bank, a Federal Savings Bank ("CFB", and Bank of the West, a California banking

---

[1] A true and accurate copy of said Notice is attached hereto, marked Exhibit "D" and by this reference made a part hereof.

- 6 -

corporation ("BW"), entered into an Agreement of Merger on or about November 23, 2005. The merger was effective December 2, 2005, and both CFC and CFB were merged into BW (being the only surviving corporation).

23.     BW is the successor in interest to CFB.

24.     Pursuant to the merger, BW acquired all the assets of CFB, including the Promissory Notes and Security Agreement that is the subject of this lawsuit.

## ORDER, JUDGMENT AND DECREE

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:

A.      Lender be and is hereby granted judgment *in personam* as against the Borrower, Superior Product Distribution, L.L.C., f/k/a Dovetail Product Distribution, L.L.C. and the guarantors, Alan E. Meyer and John Pratt, jointly and severally, for the following sums:

(i)     Principal, interest, late fees, default interest and late charges due and owing on the Promissory Note as of April 16, 2010 in the sum of $92,706.42.

(ii)    Interest accruing per day from and after April 16, 2010 at the daily rate of $25.9959.

(iii)   Attorney's fees to be determined by this Court following the filing of an appropriate Application by counsel for Lender and after notice and opportunity for objection and/or hearing before the Court on the same.

(iv)    Court costs as taxed by the Clerk of this Court in the amount of $ 217.00

B.      Judgment is further granted *in rem* against all of the Personal Property, as hereinbefore defined, for all sums as set forth in paragraph A above.

C.      Said judgment is hereby decreed to be a lien upon the Personal Property, as described above, and Lender's Security Agreement is hereby foreclosed against the interest of all

- 7 -

of the Defendants and that said Defendants are hereby forever barred or foreclosed of all interest or equity in and to the above-described Personal Property.

    D.     Said judgment and lien are superior to the rights, title and interest of any and all Defendants to this action whose rights, title and interest and/or claims are hereby decreed to be junior and inferior, subject and subsequent to Lender's Promissory Note and Security Agreement and to this judgment rendered herein, and to any rights of any purchaser at any execution sale of the above-described Personal Property, pursuant to this Judgment and Decree.

    E.     In addition to any rights that Lender may have with respect to its judgment as against the above-described Personal Property, the above-described Personal Property, upon the request of Lender, may be sold to satisfy the same, and a special execution shall, upon the request of Lender, issue for the sale of the interest of all of the Defendants in and to the above-described Personal Property.

    F.     If Lender or any party or person shall make any other advancements necessary to cure any defaults in connection with the Security Agreement or to protect the lien of Lender's Security Agreement (hereinafter collectively referred to as the "**Protective Advances**"), said Protective Advances shall be a lien upon the above-described Personal Property upon the filing by the party of person paying the same with the Clerk of this Court a verified statement of such Protective Advances as provided by law.

    G.     Whenever redemption is made from any sheriff's sale, any party or person so redeeming shall pay the Clerk of this Court, in addition to any amounts due on any Certificate of Purchase, the amount of such Protective Advances with interest at the rate of 10% per annum from and after the date of said Protective Advances having been made.

IT IS FURTHER ORDERED, ADJUGED AND DECREED that this Court shall retain jurisdiction of this matter to resolve any further disputes between the parties.

By: _____

JUDGE, 6TH JUDICIAL DISTRICT OF IOWA, JOHNSON COUNTY

Submitted by:

WHITFIELD & EDDY, P.L.C.
317 Sixth Avenue, Suite 1200
Des Moines, IA 50309-4195
Telephone: (515) 288-6041
Facsimile: (515) 246-1474
burke@whitfieldlaw.com

By _____

Thomas H. Burke    AT0001280
burke@whitfieldlaw.com

ATTORNEYS FOR PLAINTIFF, BANK OF THE WEST, SUCCESSOR-IN-INTEREST TO COMMERCIAL FEDERAL BANK

Original filed with the Court.

Copy of Order Granting Plaintiff's Motion For Summary Judgment and Judgment and Decree of Foreclosure mailed to:

Steven J. Havercamp
201 W. Second St., STE 900
Davenport, Iowa 52801
ATTORNEY FOR DEFENDANTS,
SUPERIOR PRODUCT DISTRIBUTIONAND
ALAN E. MEYER

6-21-10
S. Havercamp
T. Burke
John Pratt

CLERK OF DISTRICT COURT
JOHNSON COUNTY, IOWA
2010 JUN 21  AM 10: 38
FILED

-9-

Jason C. Palmer
801 Grand Ave., STE 3700
Des Moines, IA  50309-2317
ATTORNEY FOR DEFENDANT,
JOHN PRATT

I:\BankWest\SuperiorPro\Pleadings\Decree.doc

---

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing instrument
was served upon all parties to the above cause or to
each of the attorneys of record herein at their respective
addresses disclosed on the pleadings on
_____, 2010.

By: ☐ U. S. Mail          ☐ FAX
      ☐ Hand Delivered     ☐ Overnight Courier
      ☐ Certified Mail     ☐ Other: _____

Signature:_____

---

FILED
2010 JUN 21  AM 10: 38
CLERK OF DISTRICT COURT
JOHNSON COUNTY, IOWA

- 10 -

## ASSIGNMENT OF JUDGMENT

For and in consideration of Ten Dollars ($10.00) and other valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Bank of the West ("Assignor"), hereby transfers, assigns and sets over unto DJ Christie, Inc., a Kansas corporation, David J. Christie and Alexander W. Glenn (collectively, "Assignee"), all of Assignor's right, title and interest in and to that certain litigation, including, without limitation, that certain Order Granting Plaintiff's Motion for Summary Judgment and Judgment and Decree of Foreclosure dated June 21, 2010 entitled Bank of the West, Successor-In-Interest to Commercial Federal Bank, Plaintiff vs. Superior Product Distribution, L.L.C., f/k/a Dovetail Product Distribution, L.L.C.; Alan E. Meyer; and John Pratt, Defendants, Case No. EQCV070814 filed in the Iowa District Court in and for Johnson County ("Judgment"). Assignor represents that it has not previously pledged, or otherwise conveyed, any right, title, or interest in the Judgment, and that no person or entity other than Assignor has any rights in the Judgment and any judgments therefrom. Assignor represents and warrants that it has collected part of the judgment and that Assignee's rights with respect to the judgment are limited to collect the remaining unpaid portion of the judgment, in the approximate amount of $114,840.36 including unpaid interest and costs.

IN WITNESS WHEREOF, Assignor has executed this Assignment this 2nd day of May, 2011.

### ASSIGNOR

BANK OF THE WEST

By: _____

Name: Dennis Breson

Title: Vice President

By: _____

Name: Robin Oberg

Title: Vice President

**EXHIBIT**

G

IN THE IOWA DISTRICT COURT FOR JOHNSON COUNTY

| | |
|---|---|
| BANK OF THE WEST, SUCCESSOR-IN-INTEREST TO COMMERCIAL FEDERAL BANK,<br><br>         Plaintiff,<br><br>v.<br><br>OAKDALE LEASING 2, L.L.C.; ALAN E. MEYER; JOHN R. PRATT; WHEELER LUMBER, L.L.C.; WOLF CONSTRUCTION COMMERCIAL, INC.; J. W. KOEHLER ELECTRIC, INC., a/k/a J. W. KOEHLER ELECTRIC CO., INC. and PARTIES IN POSSESSION,<br><br>         Defendants. | Equity No. EQCV070854<br><br><br>**JUDGMENT AND DECREE OF FORECLOSURE** |

BE IT REMEMBERED that on this 3ʳᵈ day of June, 2010 this Judgment and Decree of Foreclosure (hereinafter referred to as the "**Judgment and Decree**") came on before the Court after Ruling on Plaintiff's Motion for Summary Judgment on May 3, 2010 (hereinafter referred to as the "**Ruling**"). The Court notes that this Judgment and Decree has been submitted to the Court by attorneys Thomas H. Burke and Nicholas Cooper, of the law firm of Whitfield & Eddy, P.L.C., 317 6ᵗʰ Avenue, Suite 1200, Des Moines, Iowa 50309 as attorneys for Plaintiff, Bank of the West, Successor-in-Interest to Commercial Federal Bank (hereinafter referred to as the "**Lender**"), pursuant to the Court's Ruling.

The Court, having examined the file, sets forth the following procedural history:

EXHIBIT

H

## COURSE OF PROCEEDINGS

On June 17, 2009, Lender filed its Suit on Promissory Note and Guaranties and Mortgage Foreclosure Petition Without Redemption, including Notice of Lis Pendens (hereinafter referred to as **"Petition"**), against Defendants, Oakdale Leasing 2, L.L.C. (hereinafter referred to as **"Borrower"**); Alan E. Meyer (hereinafter referred to as **"Meyer"**); John R. Pratt (hereinafter referred to as **"Pratt"** and collectively with Meyer as **"Guarantors"**); Wheeler Lumber, L.L.C.; Wolf Construction Commercial, Inc.; J. W. Koehler Electric, Inc., a/k/a J. W. Koehler Electric Co., Inc. and Parties in Possession, along with Affidavit of Identity of Defendants and Affidavit for Attorney Fees.[1] Along with Lender's Petition, Lender also filed a Motion for Appointment of Receiver and Request for Hearing.

An Original Notice, Petition, and all other filed pleadings, were served upon Borrower on or about June 23, 2009. The Proof of Service/Return of Service is on file. An Original Notice, Petition, and all other filed pleadings, were served upon Meyer on or about July 6, 2009. The Proof of Service/Return of Service is on file. Attorney Jason C. Palmer accepted service of the Original Notice, Petition, and all other filed pleadings, on behalf of Pratt on or about August 12, 2009. The Acceptance of Service is on file. Service was attempted on Parties in Possession at 2205 E. Grantview Dr. Units. A01-A03 and Units101-104, Coralville, Iowa, as well as 428 Westcor Dr., Coralville, Iowa.[2] According to the Johnson County Sheriff's Dept. all locations were empty. Return of Service and Diligent Searches are on file.

---

[1] Other named defendants, including IPC, Inc., Moehl Millwork, Inc., ENPA Acuistions, LLC, and University of Iowa Credit Union were released prior to service.

[2] The 428 Westcor Dr., Coralville, Iowa, property was subsequently sold and released from this foreclosure action.

The Court entered an order granting Lender's Motion for Appointment of Receiver on July 9, 2009.  However, no receiver was appointed at that time.  Subsequently, upon motion of Lender, the Court ordered that Heritage Associates Corporation of Cedar Rapids, Iowa, be appointed as Receiver over Parcel 1, as defined in Lender's Petition.  (April 22,2010 Order).

Pratt filed his Answer on or about July 22, 2009.[3]  Borrower and Meyer filed their Answer and Affirmative Defenses on or about September 11, 2009.

The remaining Defendants, Wheeler Lumber, L.L.C., Wolf Construction Commercial, Inc. and J.W. Koehler Electric, Inc., a/k/a J.W. Koehler Electric, Co. (hereinafter collectively referred to as "Defaulting Defendants"), failed to answer.  Lender served a Notice of Intent to File Written Application for Default on Defaulting Defendants on September 2, 2009.  Lender filed its Motion for Default Judgment on March 9, 2010.  On March 22, 2010, the Court entered default judgment against Defaulting Defendants and ordered "that whatever right title and interest the Defaulting Defendants have in the Subject Real Estate is junior and inferior to Lender's Mortgages and Lender's interest in the Subject Real Estate."

On March 25, 2010, Lender filed an Affidavit of Protective Advances in Favor of Bank of the West for $61,573.75.

Lender filed its motion for summary judgment, including a statement of undisputed facts and memorandum of authorities and affidavit of officer of Lender in support thereof, on March 29, 2010.  Borrower, Meyer and Pratt resisted Lender's motion (April 15, 2010 and April 22, 2010, respectively).  Lender filed its reply to said Defendants' resistance, including a

---

[3] On September 1, 2009, Pratt filed another Answer to Lender's Petition that appears to be the same as the Answer filed on July 22, 2009.

supplemental affidavit of officer of Lender on April 23, 2010. The Court took Lender's motion for summary judgment under advisement and without oral argument. On May 3, 2101, the Court entered its Order granting Lender's motion for summary judgment.[4]

## FINDINGS OF FACT

The Court, having examined the file and having reviewed the record now finds as follows:

### A.   PARTIES

1.     Lender is a banking corporation organized and existing under the laws of the State of California and is authorized to and does transact banking business in the State of Iowa.

2.     Defendant, Oakdale Leasing 2, L.L.C. (hereinafter referred to as the "**Borrower**") was and is, at all material times herein, an Iowa limited liability company with, for the purposes of this action, having its principal place of business in Coralville, Johnson County, Iowa.

3.     Defendant, Alan E. Meyer (hereinafter referred to as "Meyer") was and is, at all material times herein, an individual residing in North Liberty, Johnson County, Iowa.

4.     Defendant, John Pratt (hereinafter referred to as "**Pratt**") was, at all material times herein, an individual residing in North Liberty, Johnson County, Iowa and currently residing in Davenport, Florida.

5     Defendants, Parties in Possession, are individuals residing in Coralville, Johnson County, Iowa and the Johnson County Sheriff's Department reports that the location of the Parties in Possession are empty.

---

[4] On April 30, 2010, Jason Palmer filed a motion to withdraw as counsel for Defendant, John R. Pratt indicating therein that "Defendant John R. Pratt consents to this Motion to Withdraw, and attorney Steve Havercamp will be filing an Appearance on behalf of Defendant, John R. Pratt.

**B.**   PROMISSORY NOTE, GUARANTIES AND MORTGAGE

6.   In consideration of monies loaned to the Borrower, the Borrower made, executed and delivered in favor of Lender that certain promissory note, dated June 24, 2005, in the initial principal sum of Three Million Two Hundred Seventy-Two Thousand Two Hundred Sixty-Five Dollars and No Cents ($3,272,265.00) with interest thereon at the initial rate of 6.500% per annum, all as set forth in the promissory note, as modified by that certain Extension and Modification Agreement, dated July 31, 2008 (hereinafter collectively referred to as the "**Promissory Note**"). A true and accurate copy of the Promissory Note, showing the signature of the duly authorized representative of the Borrower is attached to Lender's Petition, marked as Exhibit "A."

7.   On June 24, 2005, Meyer and Pratt each made, executed and delivered in favor of Lender a written guaranty (hereinafter individually referred to as the "**Meyer Guaranty**" and "**Pratt Guaranty**" respectively and hereinafter collectively with Meyer Guaranty referred to as the "**Guaranties**") for the obligations of the Borrower to the Lender.   A true and accurate copy of the Meyer Guaranty and the Pratt Guaranty are attached to Lender's Petition marked as Exhibits "B" and Exhibit "C" respectively.

8.   By their respective terms, the "unlimited" Guaranties "absolutely and unconditionally" obligate Meyer and Pratt for all amounts due and owing to the Lender by the Borrower.

9.   In order to further secure payment of the Promissory Note, the Borrower made, executed and delivered in favor of Lender, on or about June 24, 2005, that certain mortgage (hereinafter referred to as "**Mortgage 1**" or "**Mortgage**"), recorded in the office of the Johnson

- 5 -

County (Iowa) Recorder on June 30, 2005, in Book 3900, at Page 45.[5]  A true and accurate copy of Mortgage 1, showing the signature of the duly authorized representative of the Borrower, is attached to Lender's Petition marked as Exhibit "D."

10    Mortgage 1 encumbers certain real estate commonly known as 2205 East Grantview Drive, Coralville Johnson County, Iowa, and formerly legally described as:

> *Lot 1 of Dovetail Estates – Part 7, a subdivision in the City of Coralville, Johnson County, Iowa*

and now legally described as:

> *Units A01, A02, A03, 101, 102, 103 and 104, Building 2, Oakdale Commerce Condominiums, according the Declaration thereof recorded in Book 4233, Page 546, as amended by amendment recorded in Book 4360, Page 792, Records of the Johnson County Recorder.*

(hereinafter referred to as **"Parcel 1"** or the **"Subject Real Estate"**).

11.    The duly authorized representative of Lender sent to the Borrower a notice of default, dated February 10, 2009 (hereinafter referred to as the **"Default Notice"**) and the Borrower failed to pay the Promissory Note..  A true and accurate copy of the Default Notice is attached to Lender's Petition, marked as Exhibit "F."

12.    The same day Lender and/or Meyer and Pratt executed the Promissory Note, Guaranties and Mortgage the Lender executed a Construction Loan Agreement (hereinafter referred to as the **"Loan Agreement"**).  A true and accurate copy of the Loan Agreement is attached to Lender's Statement of Undisputed Facts and Memorandum of Authorities, marked as Exhibit "G."

---

[5] Lender's Petition also referenced a Mortgage 2.  A Satisfaction of Mortgage regarding Mortgage 2 was filed on June 12, 2009, and the real estate covered by that Mortgage was released as to this mortgage foreclosure on July 6, 2009.

13.     The same day Lender and/or Meyer and Pratt executed the Promissory Note, Guaranties, Mortgage and Loan Agreement, the Borrower, Meyer and Pratt executed a Notice of Final Agreement. A true and accurate copy of the Notice of Final Agreement is attached to Lender's Statement of Undisputed Facts and Memorandum of Authorities, marked as Exhibit "H."

14.     The Lender took the (i) Promissory Note and Mortgage from the Borrower and (ii) the Guaranties from the Guarantors in good faith, for valuable consideration and without notice, actual or constructive, of any outstanding rights hostile to the rights of said Defendants or circumstances that would lead Lender to inquire concerning such hostile rights.

15.     By its terms the Promissory Note matured on December 31, 2008.

16.     The Promissory Note is in default because of the failure of Borrower to comply with or to perform when due all terms, obligations, covenants and conditions contained in the Promissory Note, as well as the failure of Borrower to pay the Promissory Note, when due, pursuant to its terms and provisions.

17.     Lender is the holder in due course of the Promissory Note and the Lender is entitled to payment thereon as such holder. In addition, pursuant to the terms and provisions of the Promissory Note and Guaranties, Lender is entitled to reasonable attorney's fees and all costs of collection from Borrower, Meyer and Pratt.

18.     The Mortgage provides that Borrower will pay all of Lender's expenses in the event of a breach by Borrower of any covenant in the Mortgage, including costs and expenses incurred by Lender in enforcing or protecting Lender's rights and remedies under the Mortgage, including, but not limited to, attorney's fees, court costs and other legal expenses. The Mortgage

further provides that any amounts paid for the above reasons shall become part of the indebtedness secured by the Mortgage and shall accrue interest from the date of payment at the same rate as provided for in the principal indebtedness.

19.     Lender has incurred and will continue to incur, attorney's fees and expenses in connection with the collection of the amounts due under the Promissory Note.

20.     Lender has incurred abstracting costs of One Thousand Seventy-One Dollars ($1,071.00) and appraisal expenses of Four Thousand One Hundred Eighty-Two Dollars ($4,182.00).

21.     Lender made protective advances pursuant to the terms of the Promissory Note, Mortgage, and Loan Agreement in the amount of Sixty-One Thousand Five Hundred Seventy-Three Dollars and Seventy-Five Cents ($61,573.75).

22.     There is currently past due and owing on the Promissory Note, as of April 16, 2010, the unpaid principal amount of One Million Five Hundred Ninety-Five Thousand Nine Hundred Seventy-Two Dollars and No Cents ($1,595,972.00), accrued interest to April 16, 2010, in the amount of Two Hundred Seven Thousand Nine Hundred Fifty-Seven Dollars and Forty-Four Cents ($207,957.44), plus interest accruing from and after April 16, 2010, at the default rate of 8.75% per annum (currently $387.90986 per diem), plus attorneys fees, protective advances, fees and costs.

## ORDER, JUDGMENT AND DECREE

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that:

A.     Summary judgment in favor of Bank of the West is granted against Defendants Oakdale Leasing 2, L.L.C., Alan E. Meyer, John Pratt and Parties in Possession.

- 8 -

B.    Default judgment previously granted against Defaulting Defendants remains in full force and effect.

C.    Lender be and is given judgment *in personam* as against Defendants, Oakdale Leasing 2, L.L.C., Alan E. Meyer and John Pratt, jointly and severally, for the following sums due and owing on the Promissory Note, as hereinbefore defined, as of April 16, 2010:

    i.    Principal in the sum of $1,595,972.00;

    ii.   Accrued interest to April 16, 2010, in the amount of $207,957.44;

    iii.  Interest accruing from and after April 16, 2010, on the Principal at 8.75% per annum (currently $387.90986 per diem);

    iv.   Abstracting expenses incurred by the Lender in the sum of $1,071.00;

    v.    Appraisal expenses incurred by Lender in the sum of $4,182.00;

    vi.   Protective advances incurred by Lender in the sum of $61,573.75;

    vii.  Attorney's fees in favor of Lender to be determined by the Court following the filing of Lender's Application for Attorney Fees;

    viii. Court costs, as taxed by the Clerk of this Court in the amount of $ 430.25

D.    Lender be and is given judgment *in rem* against the Subject Real Estate legally described as:

*Lot 1 of Dovetail Estates – Part 7, a subdivision in the City of Coralville, Johnson County, Iowa*

and now legally described as:

*Units A01, A02, A03, 101, 102, 103 and 104, Building 2, Oakdale Commerce Condominiums, according the Declaration thereof recorded in Book 4233, Page 546, as amended by amendment recorded in Book 4360, Page 792, Records of the Johnson County Recorder.*

for all sums due and owing on the Promissory Note, accrued interest to April 16, 2010, plus

- 9 -

additional accrued interest from and after April 16, 2010, plus appraisal fees, abstracting fees, protective advances, attorney fees and expenses, and all other fees and costs as more set forth in paragraph C above.

E.   Said judgment *in rem* is superior to the right, title, interest and/or claims of any and all Defendants to this action whose right, title, interest and/or claims are decreed to be junior and inferior, subject and subsequent to Lender's Mortgage, as hereinbefore defined, and to this Judgment and Decree and to any rights of any person at any execution sale of the above described Subject Real Estate.

F.   Lender's Mortgage is hereby foreclosed of the interest of all of the Defendants and that said Defendants are hereby fully and forever barred to foreclose all interest or equity in and to the Subject Real Estate.  The Court specifically finds that no Demand for Delay of Sale has been filed and that sheriff's sale of the Subject Real Estate may be scheduled as soon as possible by the Sheriff of Johnson County, Iowa.

G.   In addition to any rights Lender may have with respect to the judgment as against the above described Subject Real Estate, or so much thereof that is necessary to pay the judgment rendered herein, interest, costs, abstracting fees, attorney fees, advances and accruing costs, the Subject Real Estate shall, upon request of Lender, be sold to satisfy the same, and a special execution shall, upon request of Lender, issue for the sale of the interest of all of the Defendants in the Subject Real Estate.

H.   That if any person, or party shall make any other advances or pay any taxes or amounts necessary to cure any defaults in connection with the Mortgage, or to protect the lien of Lender's Mortgage (hereinafter collectively referred to as "Protective Advances"), said

- 10 -

Protective Advances shall be a lien upon the above described respective real estate upon filing by the party or person paying the same with the Clerk of this Court a verified statement of such Protective Advances as provided by law.

I.      The Subject Real Estate shall be sold at public auction in the County of Johnson, State of Iowa, by the Johnson County Sheriff for sale, and that the Johnson County Sheriff shall give public notice of the time and place of the sale in the manner provided by law, and the publication of the sale shall be in a regularly issued newspaper of general circulation within Johnson County, Iowa. The Notice shall be published once each week for two weeks, the first of such publication at least four weeks before the date of the sale.  If Lender shall be the successful bidder at the sale, the Johnson County Sheriff may take the receipt of the Lender in lieu of the cash payment mentioned above.

J.      If the purchaser of any of the parcels which comprise the Subject Real Estate be denied possession of the property, a Writ of Assistance shall issue for the purchaser and place the purchaser of the Subject Real Estate in peaceable possession of the property.

**IT IS FURTHER ORDERED** that except for final determination as to attorney fees and expenses based upon the appropriate application by Lender to be made within 30 days from the date of this Judgment and Decree all matters have been resolved and there are no issues remaining for trial.  Therefore, this trial should be removed from the docket.  This Court shall retain jurisdiction of this matter to resolve any further disputes between parties.

Signed this 3rd day of _____June_____, 2010.

_____
JUDGE, SIXTH JUDICIAL DISTRICT OF IOWA

- 11 -

Submitted by:

Nicholas Cooper  AT0001600
WHITFIELD & EDDY, P.L.C.
317 Sixth Avenue, Suite 1200
Des Moines, Iowa  50309-1495
Telephone:  (515) 288-6041
Facsimile:  (515) 246-1474
E-Mail:  burke@whitfieldlaw.com
ATTORNEY FOR PLAINTIFF,
BANK OF THE WEST,
SUCCESSOR-IN-INTEREST
TO COMMERCIAL FEDERAL BANK

Original filed.

Copies of Judgment and Decree
of Foreclosure to:

Nicholas Cooper
Thomas H. Burke
317 Sixth Aveue, Suite 1200
Des Moines, IA 50309-4195
ATTORNEYS FOR PLAINTIFF,
BANK OF THE WEST
Steven J. Havercamp
201 W. Second St., STE 900
Davenport, Iowa 52801
ATTORNEY FOR DEFENDANTS,
JA HOLDINGS, L.L.C.
ALAN E. MEYER

Jason C. Palmer
801 Grand Ave., STE 3700
Des Moines, IA  50309-2317
ATTORNEY FOR DEFENDANT,
JOHN PRATT

Wheeler Lumber, L.L.C.
c/o Tim Blount, Registered Agent
6100 Thornton Avenue, Suite 200
Des Moines, IA 50321
DEFENDANT

J.W. Koehler Electric, Inc., a/k/a J.W. Koehler Electric Co.
c/o Robin K. Rollins, Registered Agent
2716 W. Central Park Avenue
Davenport, IA 52804
DEFENDANT

Wolf Construction Commercial, Inc.
c/o Joe H. Harris, Registered Agent
225 2nd Street SE
Cedar Rapids, IA 52401
DEFENDANT

6-3-10

J. Palmer
S. Havercamp
N. Cooper
T. Burke
      J. Pratt

FILED

2010 JUN -3  PM 2: 17

CLERK OF DISTRICT COURT
JOHNSON COUNTY, IOWA

- 13 -

## ASSIGNMENT OF JUDGMENT

For and in consideration of Ten Dollars ($10.00) and other valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Bank of the West ("Assignor"), hereby transfers, assigns and sets over unto DJ Christie, Inc., a Kansas corporation, David J. Christie and Alexander W. Glenn (collectively, "Assignee"), all of Assignor's right, title and interest in and to that certain litigation, including, without limitation, that certain Judgment and Decree of Foreclosure dated June 3, 2010 entitled Bank of the West, Successor-In-Interest to Commercial Federal Bank, Plaintiff vs. Oakdale Leasing 2, L.L.C.; Alan E. Meyer; John R. Pratt; Wheeler Lumber, L.L.C.; Wolf Construction Commercial, Inc.; J.W. Koehler Electric, Inc., a/k/a J.W. Koehler Electric Co., Inc. and Parties In Possession, Defendants,  Case No. EQCV070854 filed in the Iowa District Court in and for Johnson County ("Judgment").  Assignor represents that it has not previously pledged, or otherwise conveyed, any right, title, or interest in the Judgment, and that no person or entity other than Assignor has any rights in the Judgment and any judgments therefrom.  Assignor represents and warrants that it has collected part of the judgment and that Assignee's rights with respect to the judgment are limited to collect the remaining unpaid portion of the judgment, in the approximate amount of $1,602,222.90 including unpaid interest and costs.

IN WITNESS WHEREOF, Assignor has executed this Assignment this $2^{rd}$ day of May, 2011.

**ASSIGNOR**

BANK OF THE WEST

By: _____

Name: _Dennis Boesen_

Title: _Vice President_

By: _____

Name: _Robin Obara_

Title: _Vice President_

**EXHIBIT**

I

IN THE IOWA DISTRICT COURT FOR MUSCATINE COUNTY

| | |
|---|---|
| BANK OF THE WEST, SUCCESSOR –IN-INTEREST TO COMMERCIAL FEDERAL BANK, | Equity No. EQCV 19177 |
| Plaintiff, | |
| v. | STIPULATED JUDGMENT AND DECREE OF FORECLOSURE |
| JA HOLDINGS, L.L.C.; ALAN E. MEYER; JOHN PRATT; and PARTIES IN POSSESSION, | |
| Defendants. | |

BE IT REMEMBERED that on this 20 day of July , 2010, this Stipulated Judgment and Decree of Foreclosure ("Foreclosure Decree") came on before the Court. The Court notes that said Foreclosure Decree has been submitted to the Court by attorney Thomas H. Burke of the law firm of Whitfield & Eddy, P.L.C., 317 Sixth Avenue, Suite 1200, Des Moines, Iowa 50309-4195 as attorneys for Plaintiff, Bank of the West, successor-in-interest to Commercial Federal Bank (hereinafter referred to as "Lender").

The Court further notes that this Foreclosure Decree has been submitted to the Court pursuant to the terms and provisions of that certain Lawsuit Settlement Agreement (the "Agreement") entered into by and between the Lender, and the Defendants, JA Holdings, L.L.C., Alan E. Meyer and John Pratt, a copy of which is attached hereto, marked as Exhibit "1" and made a part hereof.

The Court further notes that this Foreclosure Decree has been consented to by the Defendants, JA Holdings, L.L.C., Alan E. Meyer, and John Pratt.

The Court, having examined the file, heard the statements of counsel and reviewed the record, now hereby makes the following:

-1-

EXHIBIT

J

## FINDINGS OF FACT

1.     Lender is a banking corporation organized and existing under the laws of the State of California and is authorized to and does transact banking business in the State of Iowa.

2.     The Defendant, JA Holdings, L.L.C. (hereinafter referred to as "**Borrower**") was and is, at all material times herein, an Iowa limited liability company with, for the purposes of this action, having its principal place of business in Coralville, Johnson County, Iowa.

3.     The Defendant, Alan E. Meyer (hereinafter referred to as "**Meyer**") was and is, at all material times herein, an individual residing in North Liberty, Johnson County, Iowa.

4.     The Defendant, John Pratt (hereinafter referred to as "**Pratt**") was and is, at all material times herein, an individual residing in North Liberty, Johnson County, Iowa and currently residing in Davenport Florida.

5.     The Defendants, Parties in Possession, were and are, at all material times herein, unnamed and perhaps unknown individuals residing in Muscatine County, Iowa.

6.     In consideration of monies loaned to the Borrower, the Borrower made, executed and delivered in favor of Lender that certain promissory note, dated April 5, 2005, in the initial principal sum of Six Hundred Seventy-Five Thousand Dollars ($675,000.00) with interest thereon at the initial rate of 7.250% per annum, all as set forth in the promissory note (hereinafter referred to as the "**Promissory Note**"). A true and accurate copy of the promissory note showing the signature of the duly authorized representative of the Borrower is attached to Lender's previously filed Suit on Promissory Note and Guaranties and Mortgage Foreclosure Petition Without Redemption (hereinafter referred to as the "**Petition**"), marked as Exhibit "A" and by this reference made a part hereof.

7.     On or about April 5, 2005,  Meyer and Pratt each made, executed, and delivered in favor of Lender their written guaranty (hereinafter collectively referred to as the "**Guaranties**"

-2-

and individually as a "**Guaranty**") of the obligations of the Borrower to the Lender. A true and accurate copy of the Guaranty given by Meyer is attached to Lender's Petition, marked as Exhibit "B" and made a part hereof. A true and accurate copy of the Guaranty given by Pratt is attached to Lender's Petition, marked as Exhibit "C" and made a part hereof. By their respective terms, the Guaranties obligate Meyer and Pratt for all amounts due and owing to the Lender by the Borrower.

8.     In order to further secure payment of the Promissory Note, the Borrower made, executed and delivered in favor of Lender, on or about April 5, 2005, that certain real estate mortgage (hereinafter referred to as the "**Mortgage**"). A true and accurate copy of the Mortgage, showing the signature of the duly authorized representative of the Borrower is attached to Lender's Petition, marked Exhibit "D" and by this reference made a part hereof.

9.     The Mortgage encumbers certain real estate located at 403 West 1st Street, Wilton, Iowa, Muscatine County, Iowa, and legally described as follows, to-wit:

Lots 1, 2 and 3, and the East 20 feet of Lot 4, in Block 23, of the City of Wilton, in Muscatine County, Iowa; and

A part of Block 22, of the City of Wilton, in Muscatine County, Iowa, and a part of the Northeast Quarter of the Southeast Quarter of Section 1, Township 78 North, Range 2 West of the 5th Principal Meridian, in the City of Wilton, in Muscatine County, Iowa, particularly described as follows: Beginning at the Southwest corner of said Block 22; thence East along the South line of said Block 22 a distance of 120 feet; thence North parallel with the West line of said Block 22 extended to the point of intersection with a line which is 50 feet Southerly of and parallel with the main track centerline of the former Chicago, Rock Island and Pacific Railroad Company; thence Southwesterly along said line which is 50 feet Southerly of and parallel with said main track centerline to the point of intersection with the West line of the East 20 feet of Lot 4, in Block 23, of the City of Wilton, Iowa, extended; thence South along the West line of the East 20 feet of said Lot 4 extended to the Northwest corner of the East 20 feet of said Lot 4; thence Southeasterly along the Northerly line of said Block 23 to the Northeast corner of said Block 23; thence South along the East line of said Block 23 to the Southeast corner of said Block 23; thence East to the point of beginning,

(hereinafter referred to as the "Subject Real Estate").

-3-

10. The Mortgage was recorded in the office of the Muscatine County (Iowa) Recorder on April 15, 2005, as Document #2005-02630.

11. Lender took the Promissory Note from the Borrower and the Guaranties from Meyer and Pratt in good faith, for valuable consideration and without notice, actual or constructive, of any outstanding rights hostile to the rights of said Borrower, Meyer and Pratt or circumstances that would lead Lender to inquire concerning such hostile rights.

12. The Promissory Note is in default because of the failure of the Borrower to comply with or to perform when due all terms, obligations, covenants and conditions contained in the Promissory Note, as well as the failure of the Borrower to pay the Promissory Note, when due, pursuant to its terms and provisions.

13. The duly authorized representative of Lender sent to the Borrower a notice of default, dated February 10, 2009 (hereinafter referred to as the "**Default Notice**"). A true and accurate copy of the Default Notice is attached to Lender's Petition, marked as Exhibit "F", and by this reference made a part hereof. Under the Default Notice, the Lender made demand on the Borrower for payment in full of the Promissory Note. The Borrower failed to pay the Promissory Note.

14. The Lender is the holder of the Promissory Note and is entitled to payment thereon as such holder.

15. Pursuant to the terms and provisions of the Promissory Note and Guaranties, Lender is entitled to reasonable attorney's fees and all costs of collection from the Borrower, Meyer and Pratt.

16. The Mortgage provides that the Borrower will pay all of the Lender's expenses in the event of a breach by Borrower of any covenant in the Mortgage, including costs and

-4-

expenses incurred by Lender in enforcing or protecting Lender's rights and remedies under the Mortgage, including, but not limited to, attorney's fees, court costs and other legal expenses.

17.     The Mortgage further provides that any amounts paid for the above reasons shall become part of the indebtedness secured by the Mortgage and shall accrue interest from the date of payment at the same rate as provided for in the principal indebtedness.

18.     The Lender has incurred abstracting expenses and will incur future expenses for abstracting continuation in connection with this foreclosure proceeding.

19.     Additionally, Lender has incurred and will continue to incur, appraisal fees, inspection fees, attorney's fees and expenses in connection with this foreclosure.

20.     Lender alleges that the Subject Real Estate, as described above, is not (i) used for agricultural purposes as defined within Iowa Code §535.13, (ii) a homestead or (iii) a one or two family dwelling.

21.     The Borrower has or claims to have some right to and/or title to and/or interest in the above-described Subject Real Estate.  Lender would assert that whatever right, title or interest that Borrower has in and to the above-described Subject Real Estate is junior and inferior to the lien of Lender's Mortgage.  The Court finds that whatever right, title or interest that the Borrower has in and to the above-described Subject Real Estate is junior and inferior to the lien of Lender's Mortgage.

22.     The Parties in Possession may have or claim to have some right to and/or title to and/or interest in the above-described Subject Real Estate.  Lender would assert that whatever right, title or interest that the Parties in Possession have in and to the above-described Subject Real Estate is junior and inferior to the lien of Lender's Mortgage.  The Court finds that whatever right, title or interest that the Parties in Possession have in and to the above-described Subject Real Estate is junior and inferior to the lien of Lender's Mortgage.

-5-

23.    Pursuant to the terms of the Agreement, the Borrower, Meyer and Pratt agreed that the Lender shall have the right to present this Foreclosure Decree to the Court upon the occurrence of certain events, as set forth in Paragraph 3.3.3 of the Agreement, together with an affidavit of the Lender (hereinafter referred to as the "**Lender's Affidavit**") stating that the Lender is entitled to file this Foreclosure Decree herein and the reason therefore. The Lender's Affidavit is submitted to the Court with this Foreclosure Decree.

24.    As of May 7, 2010, there is owed on the Promissory Note the following amounts:

| | |
|---|---:|
| Principal | $613,916.45 |
| Interest at 7.25% | $66,910.54 |
| Interest at 5.00% (hereinafter referred to as the "**Default Interest**") | $44,269.34 |
| Late Fees | 6,234.54 |
| Protective Advances (real estate taxes paid 4/27/2010) | 11,664.00 |
| Protective Advances (real estate taxes paid 7/2/2009, net of lease payments received) | 1,916.00 |
| **TOTAL DAMAGES**\*\* | $744,910.87 |

\*\*plus ordinary interest accruing at $125.98495 per day from and after May 7, 2010, Default Interest accruing at $86.88617 per day from and after May 7, 2010, and costs, including attorney's fees.

25.    The Court further finds that none of the above-described Subject Real Estate is the homestead or the personal dwelling, of the Borrower, Meyer or Pratt and that Lender affirmatively does not waive any deficiency judgment herein, sheriff's sale of the Subject Real Estate shall take place as soon as can be scheduled by the Sheriff of Muscatine County, Iowa and there shall be a two-month period of redemption thereafter.

### ORDER, JUDGMENT AND DECREE

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:

A.    Lender be and is hereby granted judgment *in personam*, jointly and severally, as against the Defendants, JA Holdings, Inc., Alan E. Meyer and John Pratt for the following sums due and owing on the Promissory Note:

(i)    Past due principal, interest, late fees and protective advances as to the Promissory Note in the amount of $744,910.87 as of May 7, 2010.

(ii)    Interest accruing on the Promissory Note in the amount of $212.87112 per day

-6-

from and after May 7, 2010.

(iii)   Attorney's fees incurred by Lender in an amount to be approved by this Court.

(iv)   Court costs as taxed by the Clerk of this Court in the amount of $ 383.00

B.   Judgment is further granted *in rem* as against all of the above-described Subject Real Estate for all sums as set forth in paragraph A above.

C.   Said Judgment is hereby decreed to be a lien upon the Subject Real Estate as legally described above.

D.   Said judgment and lien are superior to the rights, title, interest and/or claims of any and all Defendants to this action, whose rights, title, interest and/or claims are hereby decreed to be junior and inferior, subject and subsequent to Lender's Promissory Note and Mortgage, and to this Foreclosure Decree rendered herein.

E.   Lender's Mortgage is hereby foreclosed against the interest of all of the Defendants and that said Defendants are hereby forever barred and foreclosed of all interest or equity in and to the above-described Subject Real Estate, except for statutory redemption rights.

F.   In addition to any rights that Lender may have with respect to its Judgment as against the above-described Subject Real Estate, or so much thereof as may be necessary to pay the Judgment rendered herein, interest, costs, and accruing costs, the Subject Real Estate shall, upon the request of Lender, be sold to satisfy the same, and a special execution shall, upon the request of Lender, issue for the sale of the interest of all of the Defendants in and to the above-described Subject Real Estate.

G.   If Lender or any party or person shall make any other advancements necessary to cure any defaults in connection with the Mortgage, or to protect the lien of Lender's Mortgage (hereinafter collectively referred to as the "Protective Advances"), said Protective

-7-

Advances shall be a lien upon the above-described Subject Real Estate, upon the filing by the party or person paying the same with the Clerk of this Court, a verified statement of Protective Advances as provided by law. Whenever redemption is made from any sheriff's sale, any party or person so redeeming shall pay the Clerk of this Court, in addition to any amounts due on any Sheriff's Certificate of Purchase, the amount of such Protective Advances, with interest at the rate of 7.25% per annum, from and after the day of said Protective Advances having been made.

H.    The Court finds that the Borrower has filed a timely demand for delay of sale and as such no sheriff's sale of the Subject Real Estate shall take place until after 60 days from the date of filing of this Foreclosure Decree.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that this Court shall retain jurisdiction of this matter to resolve any further disputes between the parties.

By: _____
JUDGE, 7TH JUDICIAL DISTRICT OF IOWA,
MUSCATINE COUNTY

Submitted by:

WHITFIELD & EDDY, P.L.C.
317 Sixth Avenue, Suite 1200
Des Moines, IA 50309
Telephone: (515) 288-6041/Facsimile: (515) 246-1474
email: burke@whitfieldlaw.com

By _____
Thomas H. Burke    AT0001280

ATTORNEYS FOR PLAINTIFF, BANK OF THE
WEST, SUCCESSOR-IN-INTEREST TO
COMMERCIAL FEDERAL BANK

-8-

Consented to by the Defendants:

JA Holdings, L.L.C.

By _____
Its _____

_____
Alan E. Meyer

_____
John Pratt

Original filed with the Court.

Copy of Stipulated Judgment and Decree of Foreclosure mailed to:

Steven J. Havercamp
Stanley, Lande & Hunter, P.C.
900 U.S. Bank Center
Davenport, IA 52801

ATTORNEY FOR DEFENDANTS
JA HOLDINGS, L.L.C. AND
ALAN E. MEYER

JA Holdings, L.L.C.
2201 East Grantview Drive, Suite 200
Coralville, IA 52241

DEFENDANT

Alan E. Meyer
1137 N Elm Street
West Liberty, IA 52241

DEFENDANT

John Pratt
c/o Dovetail Companies
200 Bella Cita Boulevard
Davenport, FL 33987

DEFENDANT

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing instrument was served upon all parties to the above cause or to each of the attorneys of record herein at their respective addresses disclosed on the pleadings on _____, 2010.

By:  ☐ U. S. Mail          ☐ FAX
      ☐ Hand Delivered    ☐ Overnight Courier
      ☐ Certified Mail     ☐ Other: _____

Signature: _____

Consented to by the Defendants:

JA Holdings, L.L.C.

By _____

Its _____

_Alan E. Meyer_

Alan E. Meyer

John Pratt

Original filed with the Court.

Copy of Stipulated Judgment and Decree of Foreclosure mailed to:

Steven J. Havercamp
Stanley, Lande & Hunter, P.C.
900 U.S. Bank Center
Davenport, IA  52801

ATTORNEY FOR DEFENDANTS
JA HOLDINGS, L.L.C. AND
ALAN E. MEYER

JA Holdings, L.L.C.
2291 East Grantview Drive, Suite 200
Coralville, IA 52241

DEFENDANT

Alan E. Meyer
1137 N Elm Street
West Liberty, IA 52241

DEFENDANT

John Pratt
c/o Dovetail Companies
200 Bella Cita Boulevard
Davenport, FL  33987

DEFENDANT

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing instrument was
served upon all parties to the above cause to each of the
attorneys of record herein at their respective addresses disclosed
on the pleadings on _____, 2010.

By:  ☐ U. S. Mail            ☐ FAX
     ☐ Hand Delivered        ☐ Overnight Courier
     ☐ Certified Mail        ☐ Other

Signature: _____

-9-

## ASSIGNMENT OF JUDGMENT

For and in consideration of Ten Dollars ($10.00) and other valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Bank of the West ("Assignor"), hereby transfers, assigns and sets over unto DJ Christie, Inc., a Kansas corporation, David J. Christie and Alexander W. Glenn (collectively, "Assignee"), all of Assignor's right, title and interest in and to that certain litigation, including, without limitation, that certain Stipulated Judgment and Decree of Foreclosure dated July 20, 2010 entitled Bank of the West, Successor-In-Interest to Commercial Federal Bank, Plaintiff vs. JA Holdings, L.L.C.; Alan E. Meyer; John Pratt; and Parties In Possession, Defendants,  Case No. EQCV19177 filed in the Iowa District Court in and for Muscatine County ("Judgment").  Assignor represents that it has not previously pledged, or otherwise conveyed, any right, title, or interest in the Judgment, and that no person or entity other than Assignor has any rights in the Judgment and any judgments therefrom.  Assignor represents and warrants that it has collected part of the judgment and that Assignee's rights with respect to the judgment are limited to collect the remaining unpaid portion of the judgment, in the approximate amount of $356,172.00 including unpaid interest and costs.

IN WITNESS WHEREOF, Assignor has executed this Assignment this _2nd_ day of _May_, 2011.

### ASSIGNOR

BANK OF THE WEST

By: _____

Name: _Dennis Boeson_

Title: _Vice President_

By: _____

Name: _Robin Oberg_

Title: _Vice President_

EXHIBIT

K

IN THE IOWA DISTRICT COURT FOR JOHNSON COUNTY

| | | |
|---|---|---|
| U. S. BANK, N.A., | ) | LAW NO.  LACV 071055 |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DOVETAIL BUILDERS 2, L.L.C., | ) | **ORDER RE PLAINTIFF'S** |
| JOHN R. PRATT, ALAN E. MEYER, | ) | **MOTION TO ENFORCE** |
| and ASPERITAS, L.L.C., | ) | **SETTLEMENT AGREEMENT** |
| | ) | |
| **Defendants.** | ) | |

ON THIS _16_ day of _August_, 2010, this cause comes before the Court on Plaintiff U.S. Bank, N.A.'s ("Bank") Motion to Enforce Settlement Agreement.

The Court, having examined the Bank's Motion, along with the other pleadings on file in this matter, finds that on November 23, 2005, Dovetail made, executed and delivered to the Bank that certain Revolving Credit Note ("**Note**") and that certain Revolving Credit Agreement ("**Agreement**").  The Note was in the principal sum of $500,000.00.  Dovetail also made, executed and delivered to the Bank a certain Addendum to Revolving Credit Agreement and Note ("**Addendum**") on November 23, 2005.  The Note and Agreement have thereafter been amended by Amendments to Loan Agreement and Note dated December 4, 2006, December 4, 2007, and December 4, 2008.  The Bank is the owner and holder of the Note, Agreement, and Addendum, all as thereafter amended, and that the Note and Agreement were for business purposes.

The Court further finds that Dovetail has failed to make the payment due on the Note and Agreement on March 4, 2009, when the Note matured.  On June 3, 2009, demand was sent for payment and to date, payment has not been made and the Note and Agreement are now in default.

**EXHIBIT**

**L**

The Court further finds that the terms of the Note and Agreement provide that Dovetail shall pay all costs, including attorney fees, incurred by the Bank in collecting the amounts due under the Note and Agreement. Further, on November 23, 2005, for value received, Pratt executed and delivered to the Bank a certain written Continuing Guaranty, promising to pay all obligations and indebtedness of Dovetail to the Bank. Pratt's Continuing Guaranty provides that Pratt shall pay for the costs, including attorney fees, of enforcing such obligations and collecting the indebtedness guaranteed thereby. Further, on November 23, 2005, for value received, Meyer executed and delivered to the Bank a certain written Continuing Guaranty, promising to pay all obligations and indebtedness of Dovetail to the Bank. Meyer's Continuing Guaranty provides that Pratt shall pay for the costs, including attorney fees, of enforcing such obligations and collecting the indebtedness guaranteed thereby. Further, on November 23, 2005, for value received, Asperitas executed and delivered to the Bank a certain written Continuing Guaranty promising to pay all obligations and indebtedness of Dovetail to the Bank. Aspertias' Continuing Guaranty provides that Asperitas shall pay for the costs, including attorney fees, of enforcing such obligations and collecting the indebtedness guaranteed thereby.

The Court further finds that to secure payment of the Note and Agreement, Dovetail executed and delivered to the Bank for value received that certain Business Security Agreement dated November 23, 2005. Dovetail's Business Security Agreement gave the Bank a security interest in all of Dovetail's collateral (i.e. accounts, inventory and equipment) as more particularly described in the Dovetail's Business Security Agreement. The security interest granted to the Bank in Dovetail's collateral was perfected by filing a UCC financing statement with the Iowa Secretary of State on December 15, 2005. Dovetail's Business Security Agreement provides that the Bank shall be entitled to immediate possession of Dovetail's

2

collateral upon Dovetail's default in payment of its indebtedness to the Bank.

The Court further finds that to secure payment of Asperitas' Continuing Guaranty, Asperitas executed and delivered to the Bank for value received certain Business Security Agreements dated November 23, 2005 and December 4, 2006. The Asperitas Business Security Agreements gave the Bank a security interest in all of Asperitas' collateral (i.e. accounts, inventory and equipment) as more particularly described in the Asperitas Business Security Agreements. The security interests granted to the Bank in Asperitas' collateral were perfected by filing UCC financing statements with the Iowa Secretary of State on December 15, 2005 and February 14, 2007. Asperitas' Security Agreements provide that the Bank shall be entitled to immediate possession of the Asperitas' Collateral upon Asperitas' default in payment of its indebtedness to the Bank.

The Court further finds, on review of the Bank's Motion to Enforce Settlement Agreement, that the parties named herein have consented to the entry of this Judgment, including the award of attorney fees, and the further relief granted herein.

## MONEY JUDGMENT

IT IS ACCORDINLY ORDERED, ADJUDGED AND DECREED that the Bank have and recover from the Defendants Dovetail, Asperitas, Meyer, and Pratt, the following amounts:

| Principal | Interest to 08/04/2009 | Total | Interest Per Diem |
|---|---|---|---|
| $498,645.83 | $16,161.67 | $514,807.50 | $114.28 |

together with the costs of this action plus attorney fees in the amount of $22,809.14. The Court reserves jurisdiction to award the Bank any additional attorney fees and expenses incurred in the

3

preparation and presentation of this Joint and Stipulated Order and after entry of the judgment.

## DOVETAIL AND ASPERITAS BUSINESS COLLATERAL

**IT IS FURTHER ORDERED** that Dovetail's obligations to the Bank under the Note and the Agreement are secured by the accounts, inventory; and equipment (hereinafter the "Collateral") and all such property as more particularly described in the collateral provisions of Dovetail's Business Security Agreement dated November 23, 2005 and Asperitas' Business Security Agreements dated November 23, 2005 and December 4, 2006.

**IT IS FURTHER ORDERED** that the Business Security Agreements, perfected by the Bank by filing UCC financing statements with the Iowa Secretary of State on December 15, 2005 and February 14, 2007, are the first lien against Dovetail's and Aspertias' Collateral and over the lien, title or other interest of Dovetail, Asperitas, Meyer, and Pratt, are foreclosed for the full amount of the Bank's judgment against Dovetail, Asperitas, Meyer, and Pratt, and the judgment is declared to be a lien upon the Collateral.

**IT IS FURTHER ORDERED** that the Collateral shall be seized and sold at public auction by the County Sheriff where the Collateral may be located, in accordance with the Iowa Code, and out of such proceeds the Bank shall be paid the amount of its judgment in accordance with the terms of this Judgment. Nothing herein shall be construed to require the Bank to first proceed with a sale of the Collateral before proceeding to enforce the money judgment entered in favor of the Bank against Dovetail, Asperitas, Meyer, and Pratt.

**IT IS FURTHER ORDERED** that the Collateral shall be sold at public auction in the county in which the Collateral is located. The County Sheriff shall give public notices as to the time and place of such sale in the manner provided by law, publication of the notices shall be in a regularly issued newspaper of general circulation within the county. The notice shall be

4

published once a week for at least two weeks prior to sale.

**IT IS FURTHER ORDERED** that the County Sheriff shall issue to each purchaser of the Collateral a Certificate of Purchase stating the price paid and shall also make a report of the sale to the Court. After the sale of such Collateral, Dovetail, Asperitas, and Pratt are forever barred and foreclosed from all right, title or interest in the Collateral.

**IT IS FURTHER ORDERED** that if the Collateral is purchased by a bidder other than the Bank, after first awarding the proceeds from the sale to the Bank's judgment entered against Dovetail, Asperitas, and Pratt, plus any additional interest, attorney fees, advances, and accruing costs then due to the Bank, the remaining surplus, if any, shall be deposited with the Clerk of this Court, subject to further order of the Court.

**IT IS FURTHER ORDERED** that if there is a deficiency in the amounts paid to the Bank after the sale of the Collateral, the Bank shall have judgment against Dovetail, Asperitas, Meyer, and Pratt for the sums remaining due.

It is so ordered this _16_ day of _August_, 2010.

_[signature]_

JUDGE, SIXTH JUDICIAL DISTRICT

8-17-10

J. Palmer
H. Dane III
H. Rice
S. Tyler

FILED

2010 AUG 17  AM 10: 36

CLERK OF DISTRICT COURT
JOHNSON COUNTY, IOWA

Original filed.

Clerk to notice:

Stephen W. Tyler
WHITFIELD & EDDY, PLC
3737 Woodland Ave., Suite 400
West Des Moines, IA  50266
ATTORNEY FOR PLAINTIFF U.S. BANK

Jason C. Palmer
BRADSHAW LAW FIRM
801 Grand Avenue, Suite 3700
Des Moines, IA  50309-8004
ATTORNEY FOR DEFENDANT PRATT

H.J. Dane
Attorney at Law
1111 East River Drive
Davenport, IA 52803
ATTORNEY FOR DEFENDANT MEYER

I:\USBank\Dovetail .1264\Pleadings\Order re Motion to Enforce.docx

2010 AUG 17  AM 10: 36
CLERK OF DISTRICT COURT
JOHNSON COUNTY, IOWA

6

## ASSIGNMENT

In accordance with the Assignment Agreement (the "Agreement") dated as of May 1_8_, 2011, between U.S. Bank National Association, as Bank ("Bank") and David Christie, Alexander Glenn and D. J. Christie, Inc., as Buyer (collectively, "Buyer"), Bank does transfer, convey and assign, set over and otherwise convey to Buyer WITHOUT RECOURSE, "AS-IS" AND WITHOUT REPRESENTATION OR WARRANTY OTHER THAN AS EXPLICITLY PROVIDED IN THE AGREEMENT, all of Bank's right, title, and interest in and to that certain Order Re Plaintiffs Motion to Enforce Settlement Agreement dated August 16, 2010 issued by the Iowa State District Court for Johnson County, Iowa, in the litigation styled *U.S. Bank; N.A. v. Dovetail Builders 2, L.L.C., John R. Pratt, Alan E. Meyer, and Asperitas, L.L.C.*, Law No. LACY 071055.

As of August 4, 2009, the amount of indebtedness owing the Bank was $514, 807.50, plus $22,809.14 for its attorney fees.  The principal bears interest at the rate of $114.28 per diem.  Bank has not received any payments nor made any credits to the Order since the entry of the Order and the Bank has not taken any steps to collect the same.

IN WITNESS WHEREOF, the undersigned has caused this Assignment to be duly executed and delivered as of May 1_8_, 2011.

U.S. BANK NATIONAL ASSOCIATION

By: _____

Its: John K. Wieland, Vice President

EXHIBIT

tabbies

M

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

KANSAS CITY DIVISION

| | | |
|---|---|---|
| ALAN A. MEYER, JOHN R. PRATT and<br>DOVETAIL BUILDERS 2, L.L.C., | ) | |
| | ) | |
| Plaintiff(s) | ) | |
| | ) | Case No. 07-2230-CM |
| vs. | ) | |
| | ) | |
| DAVID J. CHRISTIE, ALEXANDER GLENN,<br>D.J. CHRISTIE, INC. and THE BLUFFS, L.L.C. | ) | |
| Defendant(s) | ) | |

SUPERSEDES BOND

Bond No. 9071367

KNOW ALL BY THESE PRESENTS, That we, David J. Christie
as Principal(s) and Washington International Insurance Company , a
New Hamsphire corporation as Surety, are held and firmly bound unto Alan A. Meyer, John R. Pratt and
Dovetail Builders 2, L.L.C. , in the sum of One Million, One Hundred Twenty Five Thousand and No/100
Dollars ($1,125,000.00), for the payment of which, well and truly to be made, we bind ourselves, our heirs, executors,
administrators, successors and assigns, severally, firmly by these presents.

Sealed and dated this 15th day of January, 2010.

THE CONDITION OF THIS OBLIGATION IS SUCH, That Whereas, the United States District Court for the
District of Kansas, Kansas City Division in the above entitled action has required security for costs and charges which
may be awarded against said Principal.

NOW THEREFORE, if the said Principal shall pay or cause to be paid such costs and charges as may be awarded
against said Principal by judgment or in the progress of the action, not exceeding the sum aforesaid, then this
obligation shall be void; otherwise to remain in full force and effect.

David J. Christie _____
Principal

David J. Christie, Individual _____

Approved this 20th day of ___Jan___ 2010 .

Washington International Insurance Company
Surety

Christy M. McCart, Attorney-in-Fact

_____
Judge

EXHIBIT

N

STATE OF MISSOURI

COUNTY OF JACKSON

Bond No. <u>9071367</u>

On <u>January 15, 2010</u>, before me, a Notary Public in and for the above county, personally appeared <u>Christy M. McCart</u> to me personally known, who, being by me duly sworn, did state that he/she is Attorney-in-Fact of <u>Washington International Insurance Company</u>, a corporation organized and existing under the laws of the State of <u>New Hampshire</u>, that the seal affixed to the foregoing instrument is the corporate seal of the said corporation, that the instrument was signed, sealed, and executed in behalf of said corporation by authority of its Board of Directors, and further acknowledged the said instrument and the execution thereof to be the voluntary act and deed of said corporation by <u>her</u> voluntarily executed.

IN WITNESS WHEREOF, I have hereunto subscribed by name and affixed my official seal the day and year first above written.

My Commission Expires: <u>7/26/2012</u>

_____
Notary Public

TIFFANY C. MASSEY
Notary Public - Notary Seal
STATE OF MISSOURI
Jackson County
My Commission Expires: July 26, 2012
Commission # 08379380

### NAS SURETY GROUP

NORTH AMERICAN SPECIALTY INSURANCE COMPANY
WASHINGTON INTERNATIONAL INSURANCE COMPANY

### GENERAL POWER OF ATTORNEY

KNOW ALL MEN BY THESE PRESENTS, THAT North American Specialty Insurance Company, a corporation duly organized and existing under laws of the State of New Hampshire, and having its principal office in the City of Manchester, New Hampshire, and Washington International Insurance Company, a corporation organized and existing under the laws of the State of New Hampshire and having its principal office in the City of Itasca, Illinois, each does hereby make, constitute and appoint:

PATRICK T. PRIBYL, DEBRA J. SCARBOROUGH, MARY T. FLANIGAN, RONALD J. LOCKTON, DAVID M. LOCKTON,

MELISSA D. EVANS, CHRISTY M. McCART, KATHY L. FAGAN, LAURA E. COON, LAURA M. MURREN and ADAM J. CANTU

jointly or severally

Its true and lawful Attorney(s)-in-Fact, to make, execute, seal and deliver, for and on its behalf and as its act and deed, bonds or other writings obligatory in the nature of a bond on behalf of each of said Companies, as surety, on contracts of suretyship as are or may be required or permitted by law, regulation, contract or otherwise, provided that no bond or undertaking or contract or suretyship executed under this authority shall exceed the amount of:

TEN MILLION ($10,000,000.00) DOLLARS

This Power of Attorney is granted and is signed by facsimile under and by the authority of the following Resolutions adopted by the Boards of Directors of both North American Specialty Insurance Company and Washington International Insurance Company at meetings duly called and held on the 24th of March, 2000:

"RESOLVED, that any two of the Presidents, any Managing Director, any Senior Vice President, any Vice President, any Assistant Vice President, the Secretary or any Assistant Secretary be, and each or any of them hereby is authorized to execute a Power of Attorney qualifying the attorney named in the given Power of Attorney to execute on behalf of the Company bonds, undertakings and all contracts of surety, and that each or any of them hereby is authorized to attest to the execution of any such Power of Attorney and to attach therein the seal of the Company;  and it is

FURTHER RESOLVED, that the signature of such officers and the seal of the Company may be affixed to any such Power of Attorney or to any certificate relating thereto by facsimile, and any such Power of Attorney or certificate bearing such facsimile signatures or facsimile seal shall be binding upon the Company when so affixed and in the future with regard to any bond, undertaking or contract of surety to which it is attached."

By _____
Steven P. Anderson, President & Chief Executive Officer of Washington International Insurance Company
& Senior Vice President of North American Specialty Insurance Company

By _____
David M. Layman, Senior Vice President of Washington International Insurance Company
& Vice President of North American Specialty Insurance Company

IN WITNESS WHEREOF, North American Specialty Insurance Company and Washington International Insurance Company have caused their official seals to be hereunto affixed, and these presents to be signed by their authorized officers this 22nd day of _____ January _____, 20 09.

North American Specialty Insurance Company
Washington International Insurance Company

State of Illinois
County of Du Page    ss:

On this 22nd day of _____ January _____, 20 09, before me, a Notary Public personally appeared ___ Steven P. Anderson ___, President and CEO of Washington International Insurance Company and Senior Vice President of North American Specialty Insurance Company and David M. Layman, Senior Vice President of Washington International Insurance Company and Vice President of North American Specialty Insurance Company, personally known to me, who being by me duly sworn, acknowledged that they signed the above Power of Attorney as officers of and acknowledged said instrument to be the voluntary act and deed of their respective companies.

"OFFICIAL SEAL"
DONNA D. SKLENS
Notary Public, State of Illinois
My Commission Expires 10/06/2011

_____
Donna D. Sklens, Notary Public

I, _ James A. Carpenter _, the duly elected ___ Assistant Secretary ___ of North American Specialty Insurance Company and Washington International Insurance Company, do hereby certify that the above and foregoing is a true and correct copy of a Power of Attorney given by said North American Specialty Insurance Company and Washington International Insurance Company, which is still in full force and effect.

IN WITNESS WHEREOF, I have set my hand and affixed the seals of the Companies this ____ day of JAN 1 5 2010, 20 ____.

_____
James A. Carpenter, Vice President & Assistant Secretary of Washington International Insurance Company &
North American Specialty Insurance Company



**Washington**
INTERNATIONAL INSURANCE   COMPANY

1200 Arlington Heights Road, Suite 400, Itasca, Illinois 60143-2625
630/227-4700, Fax: 630/227-4705, 800/338-0753

AFFILIATE



### WASHINGTON INTERNATIONAL INSURANCE COMPANY
An Arizona Corporation

BALANCE SHEET AS OF DECEMBER 31, 2007
(Statutory Basis)

Valuation of securities on National Association of Insurance Commissioner Basis

| ASSETS | | LIABILITIES & POLICYHOLDERS' SURPLUS | |
|---|---|---|---|
| **CASH AND INVESTED ASSETS** | | **LIABILITIES** | |
| Cash | (159,676) | Outstanding Losses and Loss Expense | 10,964,360 |
| Bonds | 85,370,691 | Unearned Premiums | 3,276,377 |
| Preferred Stocks | 0 | Commissions, Taxes and Other Liabilities | 30,060,567 |
| Common Stocks | 0 | Payable to Parent, Subsidiaries & Affiliates | 1,897,332 |
| Short-Term Investments | 5,984,818 | | |
| Receivable for Securities | 0 | | |
| Invested Income Due and Accrued | 940,988 | | |
| | 93,136,821 | | 46,198,636 |
| | | | |
| **OTHER ASSETS** | | **POLICYHOLDERS' SURPLUS** | |
| Premium in Course of Collection | 3,491,391 | Capital Stock | 4,200,000 |
| Reinsurance Recoverable | 3,037,516 | Paid-In Surplus | 3,825,000 |
| Miscellaneous Assets | 396,806 | Unassigned Funds | 45,838,898 |
| | 6,925,713 | | 53,863,898 |
| | | **TOTAL LIABILITIES &** | |
| **TOTAL ADMITTED ASSETS** | 100,062,534 | **POLICYHOLDERS' SURPLUS** | 100,062,534 |

The undersigned, being duly sworn, says: That he is Vice President of Washington International Insurance Company, Itasca, Illinois that said company is a corporation duly organized, existing by virtue of the Laws of the State of Arizona and that said Company has also complied with and is duly qualified to act as Surety under the Act of Congress approved; July 1947 6 U.S.C. sec. 6-13; and that to the best of his knowledge and belief the above statement is a full, true and correct statement of the financial condition of the said Company on the 31st day of December, 2007.

James A. Carpenter, Vice President
WASHINGTON INTERNATIONAL INSURANCE COMPANY

Subscribed and sworn before me,
this 28th  day of March, 2008

Notary Public

"OFFICIAL SEAL"
DONNA D. SKLENS
Notary Public, State of Illinois
My Commission Expires 10/06/2011

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| DJ CHRISTIE, INC. | ) | |
| | ) | Case No. 11-40764-DLS-11 |
| _____Debtor & Debtor-in-Possession._____ | ) | |
| | ) | |
| DJ CHRISTIE, INC. | ) | |
| | ) | |
| Plaintiff & Debtor-in-Possession, | ) | |
| | ) | |
| v. | ) | Adversary No. 11-07043 |
| | ) | |
| ALAN E. MEYER, JOHN R. PRATT, | ) | |
| WASHINGTON INTERNATIONAL | ) | |
| INSURANCE COMPANY, | ) | |
| ALEXANDER W. GLENN, and | ) | |
| DAVID J. CHRISTIE, | ) | |
| | ) | |
| _____Defendants._____ | ) | |

**ANSWER OF DEFENDANTS DAVID J. CHRISTIE AND ALEXANDER W. GLENN TO PLAINTIFF DJ CHRISTIE, INC.'S ADVERSARY COMPLAINT (DOC. # 1) AND SEPARATE CROSSCLAIM AGAINST CO-DEFENDANTS ALAN E. MEYER AND JOHN R. PRATT**

Defendants David J. Christie and Alexander W. Glenn (collectively "Defendants") appear by and through their attorneys Woner, Glenn, Reeder & Girard, P.A. and for their answer to Plaintiff DJ Christie, Inc.'s Adversary Complaint and Separate Crossclaim against Co-defendants Alan E. Meyer and John R. Pratt respectfully state as follows:

**ANSWER OF DEFENDANTS DAVID J. CHRISTIE AND ALEXANDER W. GLENN TO PLAINTIFF DJ CHRISTIE, INC.'S ADVERSARY COMPLAINT (DOC. # 1)**

1.      Defendants admit the allegations of paragraphs 1 to 23.

**AFFIRMATIVE DEFENSES**

2.      Defendants raise the affirmative defense of setoff.

3.      Defendants raise the affirmative defense of estoppel.

4.      Defendants raise the affirmative defense of waiver.

*DJ Christie, Inc. v. Meyer*, et al.
Answer of Defendants David J. Christie and Alexander W. Glenn to Plaintiff DJ Christie, Inc.'s Adversary Complaint (Doc. # 1) and Separate Crossclaim
against Co-defendants Alan E. Meyer and John R. Pratt
**Adversary Case No. 11-07043**
In the United States Bankruptcy Court for the District of Kansas
Page **2** of **8**

5.        Defendants raise the affirmative defense of unclean hands.

6.        Defendants reserve the right to raise additional defenses as grounds for doing so are uncovered

during discovery.

## SEPARATE CROSSCLAIM BY DEFENDANTS DAVID J. CHRISTIE AND ALEXANDER W. GLENN AGAINST CO-DEFENDANTS ALAN E. MEYER AND JOHN R. PRATT

David J. Christie ("Christie") and Alexander W. Glenn ("Glenn") appear by and through their attorneys

Woner, Glenn, Reeder & Girard, P.A.  For their separate crossclaim against co-defendants Alan E. Meyer

("Meyer") and John R. Pratt ("Pratt"), Christie and Glenn respectfully state as follows:

1.        On September 8, 2009, the United States District Court for the District of Kansas ("District

Court") entered judgment in the matter of *Meyer*, et al. v. *Christie*, et al., Case No. 07-2230-CM in favor of

Meyer, Pratt and Dovetail Builders 2, L.L.C. in the amount of $9,196,445.00, plus post-judgment interest and

costs (hereafter "Federal Judgment").

2.        On January 20, 2010, Washington International Insurance Co. ("Surety") issued a Supersedeas

Bond, Bond #90713617 in the amount of $1,125,000.00 ("Bond") on behalf of DJ Christie, Inc. ("Debtor"),

Christie, Glenn and The Bluffs, L.L.C.

3.        The Bond was issued on behalf of Debtor, Christie, Glenn and The Bluffs, L.L.C. and stayed

collection efforts against Debtor, Christie, Glenn and The Bluffs, L.L.C. during appeal of the Federal Judgment.

4.        The District Court approved the Bond with the purpose of staying collections against Debtor,

Christie, Glenn and The Bluffs, L.L.C.

5.        Meyer and Pratt stayed any and all collection activity against Debtor, Christie, Glenn and The

Bluffs, L.L.C. after approval of the Bond and during the appeal of the Federal Judgment.

6.        On March 15, 2011, the United States Court of Appeals for the Tenth Circuit reduced the award

of damages to Meyer and Pratt to $7,170,603.00 and reversed the entry of judgment in favor of Dovetail Builders

2, L.L.C.

7.        The Tenth Circuit issued its mandate on April 25, 2011.

*DJ Christie, Inc. v. Meyer*, et al.
Answer of Defendants David J. Christie and Alexander W. Glenn to Plaintiff DJ Christie, Inc.'s Adversary Complaint (Doc. # 1) and Separate Crossclaim against Co-defendants Alan E. Meyer and John R. Pratt
**Adversary Case No. 11-07043**
In the United States Bankruptcy Court for the District of Kansas
Page 3 of 8

8.      Between April 29, 2011 and May 19, 2011, Debtor, Christie and Glenn acquired approximately $8,194,505.01 (as of December 10, 2011) in judgments originally rendered in Iowa ("Iowa Judgments") against Meyer and Pratt in favor of other creditors.  See Judgment Grid, attached as Exhibit "A" hereto and incorporated herein by this reference.

9.      On May 19, 2011, Debtor, Christie and Glenn registered all of the Iowa Judgments in the District Court of Dickinson County, Kansas except for one particular Iowa Judgment, *Christie*, et al., successors-in-interest to *U.S. Bank* v. *Meyer*, et al., Case No. LACV071055, District Court of Johnson County, Iowa, in the amount of $634,868.95 (as of December 10, 2011).  That judgment was not registered in Dickinson County until June 3, 2011.   The total amount due under all of Iowa Judgments as of December 10, 2011 is $8,194,505.01.  Interest is accumulating on the Iowa Judgments at the aggregate rate of $3,193.05 per day.

10.      Also on May 19, 2011, Debtor, Christie and Glenn registered a single Iowa Judgment, *Christie*, et al., successors-in-interest to *Bankers Trust Co.* v. *Meyer*, et al., Case No. EQCV071091, District Court of Johnson County, Iowa in the amount of $3,326,030.76 (as of December 10, 2011) in the Circuit Court of Jackson County, Missouri.

11.      On May 20, 2011, Debtor filed bankruptcy under Chapter 11 of U.S.C Title 11 in the United States Bankruptcy Court for the District of Kansas.

12.      On June 29, 2011, to aid collection of the Iowa Judgments, Debtor, Christie and Glenn caused the Surety to be served with a garnishment order issued by the Circuit Court of Jackson County, Missouri (Execution No. 11-EXEC-6844) applicable to Meyer, as a judgment debtor, which created a garnishment lien upon the Bond under both Kansas and Missouri law.

13.      On July 15, 2011, the Federal Judgment was amended in accord with the remand issued by the Tenth Circuit and the amended Federal Judgment was entered in favor of Meyer and Pratt against Debtor, Christie and Glenn in the amount of $7,170,603.00 plus $100.00 in punitive damages plus post-judgment interest and

*DJ Christie, Inc. v. Meyer*, et al.
Answer of Defendants David J. Christie and Alexander W. Glenn to Plaintiff DJ Christie, Inc.'s Adversary Complaint (Doc. # 1) and Separate Crossclaim against Co-defendants Alan E. Meyer and John R. Pratt
**Adversary Case No. 11-07043**
In the United States Bankruptcy Court for the District of Kansas
Page **4** of **8**

costs.  The Federal Judgment did not become final until it was amended in accord with the remand.   Interest accrues on the amended Federal Judgment at the rate of .18% per annum or $35.36 per day.

14.     On July 29, 2011, Debtor filed this adversary case naming Meyer, Pratt, Christie, Glenn and the Surety as defendants and seeking a determination of the validity, extent and priority of judgment liens held by Meyer and Pratt, an accounting of the amounts due between the parties after setoff and turnover of the amounts due pursuant to the Iowa Judgments.

15.     On August 5, 2011, to aid collection of the Iowa Judgments, Debtor, Christie and Glenn caused the Surety to be served with a garnishment order issued by the Circuit Court of Jackson County, Missouri (Execution No. 11-EXEC-7710) applicable to Pratt, as a judgment debtor, which created a second garnishment lien upon the Bond under both Kansas and Missouri law.

16.     On August 24, 2011, Pratt filed Proof of Claim No. 4 in Debtor's bankruptcy case for $7,170,703.00, the full amount of the amended Federal Judgment plus interest and costs as of July 15, 2011. Proof of Claim No. 4 did not reflect an assignment of the amended Federal Judgment.  Proof of Claim No. 4 was withdrawn a few days later.

17.     On August 25, 2011, Meyer filed Proof of Claim No. 5 in Debtor's bankruptcy case for $7,210,690.48, the full amount of the amended Federal Judgment plus costs as of August 25, 2011.  Proof of Claim No. 5 did not reflect an assignment of the amended Federal Judgment.

18.     On August 25, 2011, Pratt filed Proof of Claim No. 6 in Debtor's bankruptcy case for $7,210,690.48, the full amount of the amended Federal Judgment plus costs as of August 25, 2011.  Proof of Claim No. 6 did not reflect an assignment of the amended Federal Judgment.

19.     On October 13, 2011, the District Court directed the Surety to pay the Bond ("Payment Order") to the attorneys for Meyer and Pratt within five days.

20.     On October 14, 2011, Meyer and Pratt filed notice in Debtor's bankruptcy case that they intend to seize the stock certificates of Debtor ("the stock") from Christie for the purpose of taking control of the Debtor.

*DJ Christie, Inc. v. Meyer*, et al.
Answer of Defendants David J. Christie and Alexander W. Glenn to Plaintiff DJ Christie, Inc.'s Adversary Complaint (Doc. # 1) and Separate Crossclaim against Co-defendants Alan E. Meyer and John R. Pratt
**Adversary Case No. 11-07043**
In the United States Bankruptcy Court for the District of Kansas
Page **5** of 8

[Doc. # 98, Case No. 11-40764, Bankr. D. Kan.]  Christie and Glenn consider the notice to be in violation of 11

U.S.C. § 362.  In the notice, Meyer and Pratt stated:

> Christie owns one hundred percent (100%) of Debtor D.J. Christie, Inc.'s ("Debtor") issued and outstanding shares.  Pursuant to the Writ of General Execution, a United States Marshall or other process server is empowered to seize Mr. Christie's shares in satisfaction of the judgment entered in the Lawsuit.  Upon obtaining those shares, Meyer and Pratt, not Christie, will be entitled to direct and control all actions taken by Debtor, subject to the approval of this Court.

21.    On October 18, 2011, the Surety filed a motion for relief from stay in Debtor's bankruptcy case

noting that the Bond is subject to conflicting court orders and may constitute property of the bankruptcy estate.

22.    On November 3, 2011, attorneys for Meyer and Pratt accompanied U.S. Marshalls to Christie's

home for the purpose of seizing the stock.  Christie's attorney objected to the seizure of the stock because of the

Debtor's bankruptcy.

23.    A forced transfer of the stock will irreversibly impair Debtor's net operating loss carry-forward

("NOL carry-forward") by operation of I.R.C. § 382.  The NOL carry-forward is an asset of the bankruptcy estate

an act to impair it by forcing transfer of the stock violates 11 U.S.C. § 362(a)(3) as an act to exercise control over

property of the bankruptcy estate.

24.    On November 21, 2011, at hearing on the Surety's motion for relief from the automatic stay,

counsel for Meyer and Pratt stated that absolute assignments of substantial portions of the Federal Judgment were

executed by Meyer and Pratt prior to Debtor's bankruptcy filing.   This statement is not consistent with Proof of

Claim No. 5 and Proof of Claim No. 6 filed by Meyer and Pratt.

25.    The assignments referenced in paragraph 24 are not absolute assignments but rather merely

purport to serve as collateral securing loans to Meyer and Pratt or attorney's fees owed by Meyer and Pratt.

[Doc. # 359-364, 389-390, Case No. 07-2230-CM, D. Kan.]   At least six of the purported assignments use

language limiting the assignment to a fixed amount of the "portion of the Judgment ***actually*** paid by the

Defendants to the Assignor (the "Assigned Judgment Amount") to Assignee as ***additional collateral*** for any and

*DJ Christie, Inc. v. Meyer*, et al.
Answer of Defendants David J. Christie and Alexander W. Glenn to Plaintiff DJ Christie, Inc.'s Adversary Complaint (Doc. # 1) and Separate Crossclaim against Co-defendants Alan E. Meyer and John R. Pratt
**Adversary Case No. 11-07043**
In the United States Bankruptcy Court for the District of Kansas
Page **6** of **8**

all loans and obligations which Assignor *may have due* and owing to Assignee (collectively, the "Loan")."

(Emphasis added).   These purported assignments are conditional.

   26. On November 29, 2011, Debtor filed an objection to Proof of Claim No. 5 based on setoff and in part on the basis that the claim directly conflicts with representations by Meyer and Pratt in this court (Doc. # 104, para. 5)  that they assigned a total of $3,009,508.71 of the Federal Judgment to third-party creditors.

   27. On December 2, 2011, Debtor filed an objection to Proof of Claim No. 6 based on setoff and in part on the basis that the claim directly conflicts with representations by Meyer and Pratt in this court (Doc. # 104, para. 5)  that they assigned a total of $3,009,508.71 of the Federal Judgment to third-party creditors.

## CAUSE OF ACTION - DETERMINATION OF AMOUNTS DUE
## BETWEEN CHRISTIE, GLENN, MEYER AND PRATT

   28. Christie and Glenn repeat and re-allege the allegations contained above in paragraphs 1 to 27 as if fully set forth herein.

   29. Meyer is a natural person residing at 605 Breconshire Lane, Coralville, IA 52241.

   30. Pratt is a natural person residing at 8334 Riverdale lane, Davenport, FL 33896.

   31. This Court has jurisdiction pursuant to 28 U.S.C. § 157 and § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

   32. Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

   33. Christie and Glenn may setoff amounts owed to them by Meyer and Pratt by virtue of the Iowa Judgments against the full amount due under the Federal Judgment leaving a net amount due from Meyer and Pratt to Christie and Glenn in the approximate amount of $1,018,668.76 (as of December 10, 2011).

   34. Any assignment made by Meyer or Pratt prior to the Federal Judgment becoming final after remand from the Tenth Circuit is invalid as an assignment of a non-final tort claim.  See *Alldritt v. Kansas Centennial Global Exposition, Inc.*, 189 Kan. 649, 657, 371 P.2d 181 (1962) (choses in action in tort are not assignable).

*DJ Christie, Inc. v. Meyer*, et al.
Answer of Defendants David J. Christie and Alexander W. Glenn to Plaintiff DJ Christie, Inc.'s Adversary Complaint (Doc. # 1) and Separate Crossclaim against Co-defendants Alan E. Meyer and John R. Pratt
**Adversary Case No. 11-07043**
In the United States Bankruptcy Court for the District of Kansas
Page 7 of 8

35.    In as much as setoff will resolve all obligations due under the amended Federal Judgment to Meyer and Pratt, a judgment should be entered that the amended Federal Judgment is satisfied by setoff, and that the Bond provided by the Surety should be cancelled and the surety released.

36.    Christie and Glenn reserve the right to amend this pleading.

**WHEREFORE** the defendants David J. Christie and Alexander W. Glenn pray this Court enter judgment against Meyer and Pratt rendering an accounting of the amounts due between Christie, Glenn, Meyer and Pratt and ordering Meyer and Pratt to pay Christie and Glenn the amount due to them under the Iowa Judgments except to the extent that such debt may be setoff against amounts due under the amended Federal Judgment, plus interest to the date of payment, for an order cancelling the Bond and releasing the Surety; and for the attorney's fees and costs incurred by Christie and Glenn as a result of their efforts to collect the amounts due under the Iowa Judgments; and for the costs of this action.

RESPECTFULLY SUBMITTED:

WONER, GLENN, REEDER & GIRARD, P.A.

By: Justin W. Whitney
Bruce J. Woner, #10297
Justin W. Whitney, #23174
5611 Southwest Barrington Court South
P.O. Box 67689
Topeka, KS 66667-0689
Telephone:  (785) 235-5330
Facsimile:  (785) 235-1615
justin@wonerglenn.com
*Attorneys for Defendants David J. Christie*
*and Alexander W. Glenn*

*DJ Christie, Inc. v. Meyer*, et al.
Answer of Defendants David J. Christie and Alexander W. Glenn to Plaintiff DJ Christie, Inc.'s Adversary Complaint (Doc. # 1) and Separate Crossclaim against Co-defendants Alan E. Meyer and John R. Pratt
**Adversary Case No. 11-07043**
In the United States Bankruptcy Court for the District of Kansas
Page **8** of **8**

## CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of December, 2011, a true and correct copy of **Answer of Defendants David J. Christie and Alexander W. Glenn to Plaintiff DJ Christie, Inc.'s Adversary Complaint (Doc. #1) and Separate Crossclaim against Co-defendants Alan E. Meyer and John R. Pratt** was filed with the clerk using the CM/ECF system sending notice electronically to all participating parties.

   /s/  Justin W. Whitney

00150099 7999.001

# JUDGMENT GRID
## Judgments Held By D.J. CHRISTIE, INC.,
## DAVID J. CHRISTIE, and ALEXANDER W. GLENN
### Against Alan E. Meyer and John R. Pratt
### All Figures Calculated to 12/10/11

| CASE NAME | CASE NO. | DATE OF JUDGMENT | AMOUNT OF JUDGMENT |
|---|---|---|---|
| **I.** David J. Christie, Alexander W. Glenn, and D.J. Christie, Inc., successors-in-interest to Bank of the West v. JA Holdings LLC, John Pratt, **Alan Meyer**, et al. | Muscatine County, IA EQCV019177<br><br>**Registered In:**<br>Dickinson Co. Kansas on 5/19/11 11-MV-16 | 7/20/10 | $744,910.87 plus interest and costs<br><br>Interest:<br>$212.87112<br>per diem<br><br>**Judgment as of 12/10/11:**<br>$433,317.81 |
| **II.** David J. Christie, Alexander W. Glenn, and D.J. Christie, Inc., successors-in-interest to Bank of the West v. Oakdale Leasing 2 LLC, John Pratt, **Alan Meyer**, et al. | Johnson County, IA EQCV070854<br><br>**Registered In:**<br>Dickinson Co. Kansas on 5/19/11 11-MV-18 | 6/3/10 | $1,803,929.40 plus interest and costs.<br><br>Interest:<br>$387.90986<br>per diem<br><br>**Judgment as of 12/10/11:**<br>$1,686,011.44 |
| **III.** David J. Christie, Alexander W. Glenn, and D.J. Christie, Inc., successors-in-interest to Bank of the West v. Superior Product, John Pratt, **Alan Meyer**, et al. | Johnson County, IA EQCV070814<br><br>**Registered In:**<br>Dickinson Co. Kansas on 5/19/11 11-MV-17 | 6/21/10 | $92,706.42 plus interest and costs.<br><br>Interest:<br>$25.9959<br>per diem<br><br>**Judgment as of 12/10/11:**<br>$120,455.38 |
| **IV.** David J. Christie, Alexander W. Glenn, and D.J. Christie, Inc., successors-in-interest to Bankers Trust Co. v. Dovetail Development Group, John Pratt, **Alan Meyer**, et al. | Johnson County, IA EQCV071091<br><br>**Registered In:**<br>Dickinson Co. Kansas on 5/19/11 11-MV-14<br><br>Jackson Co. Missouri on 5/19/11 1116-CV13164 | 9/3/10 | $3,116,524.60 plus interest and costs.<br><br>Interest:<br>$1,627.00<br>per diem<br><br>**Judgment as of 12/10/11:**<br>$3,326,030.76 |

00129886.DOCX

EXHIBIT

"A"

| **V.** David J. Christie, Alexander W. Glenn, and D.J. Christie, Inc., successors-in-interest to Central State Bank v. Riverbend Land Development LLC, John Pratt, **Alan Meyer**, et al. | Muscatine County, IA EQCV019396 **Registered In**: Dickinson Co. Kansas on 5/19/11 11-MV-15 | 7/7/10 | $2,074,722.20 plus interest and costs. Interest: $824.9914 per diem **Judgment as of 12/10/11:** $1,993,820.67 |
|---|---|---|---|
| **VI.** David J. Christie, Alexander W. Glenn, and D.J. Christie, Inc., successors-in-interest to US Bank (Firstar) v. Dovetail Builders 2; John Pratt; **Alan Meyer**; et al. | Johnson County, IA LACV071055 **Registered In**: Dickinson Co. Kansas on 6/3/11 11-MV-19 | 8/17/10 | $514,807.50 plus interest and costs. Interest: $114.28 per diem **Judgment as of 12/10/11:** $634,868.95 |
| | | | **TOTAL:  $8,194,505.01** |

| **Claim as of 12/10/11 Against DJChristie/Christie/Glenn In Favor of Pratt & Meyer** Alan E. Meyer, John R. Pratt, and Dovetail Builders 2, LLC v. David J. Christie, Alexander W. Glenn, and D.J. Christie, Inc. | **Case No.** United States District Court District of Kansas 07-CV-02230 | **Judgment** 7/15/11 $7,170,603.00 plus 0.18% Interest ($35.36 per diem) | **TOTAL:  $7,175,836.25** |
|---|---|---|---|

| **Total Judgments Held by D.J. Christie, Inc., David J. Christie and Alexander W. Glenn:** | $8,194,505.01 |
|---|---|
| **Claim Held by Alan E. Meyer and John R. Pratt against D.J. Christie, Inc., David J. Christie, and Alexander W. Glenn:** | ($7,175,836.25) |
| **Remaining Amount Owed to D.J. Christie, Inc., David J. Christie, and Alexander W. Glenn After Offset As of 12/10/11:** | $ 1,018,668.76 |

00129886.DOCX

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| **D.J. CHRISTIE, INC.,** | ) | **Case No. 11-40764-11** |
| | ) | |
| Debtor. | ) | |
| | ) | |
| **D.J. CHRISTIE, INC.,** | ) | |
| | ) | |
| Plaintiff, | ) | **Adversary No. 11-07043** |
| | ) | |
| v. | ) | |
| | ) | |
| **ALAN E. MEYER, JOHN R. PRATT,** | ) | |
| **WASHINGTON INTERNATIONAL** | ) | |
| **INSURANCE COMPANY, ALEXANDER** | ) | |
| **W. GLENN, AND DAVID J. CHRISTIE,** | ) | |
| | ) | |
| Defendants. | ) | |

## ALAN E. MEYER'S AND JOHN R. PRATT'S
## COUNTERCLAIMS AND CROSSCLAIMS

Alan E. Meyer ("Meyer") and John R. Pratt ("Pratt") file their Counterclaims and Crossclaims, upon personal knowledge as to their own acts and upon information and belief as to all other matters, as follows:

### PRELIMINARY STATEMENT

1.     The United States Court of Appeals for the Tenth Circuit has affirmed the joint and several liability of D.J. Christie, Inc. ("Debtor"), David J. Christie ("Christie"), and Alexander W. Glenn ("Glenn") (jointly, "Judgment Debtors") to Meyer and Pratt for $7,170,603.00 in actual damages, $100.00 in punitive damages, post-judgment interest, and costs (the "Judgment"). The Judgment was entered on a jury verdict in the action styled, *Alan E. Meyer, et al. v. David J. Christie, et al.*, C.A. 07-2230-CM (the "Lawsuit"), pending in the

United States District Court for the District of Kansas, the Honorable Carlos Murguia presiding (the "District Court"). Punitive damages were awarded to Meyer and Pratt based on the jury's findings that Judgment Debtors breached their fiduciary duties and engaged in a civil conspiracy.

2.       Judgment Debtors now seek to offset their liability to Meyer and Pratt pursuant to the Judgment with subsequently acquired assignments of various, and wholly unrelated, breach of contract judgments entered in favor of certain lenders against Meyer, Pratt, and other third parties (the "Iowa Judgments"). Judgment Debtors purchased those judgments, at discounts to their full amounts, after the Tenth Circuit affirmed the Judgment and with purportedly illiquid assets that they previously represented to the District Court were unavailable to post a larger supersedeas bond. Those and other reasons demonstrate that Judgment Debtors cannot offset their liability pursuant to the Judgment with the Iowa Judgments.

## PARTIES

3.       Meyer is an individual residing at 605 Breconshire Lane, Coralville, Iowa 52241.

4.       Pratt is an individual residing at 8334 Riverdale Lane, Champions Gate, Florida 33896.

5.       Debtor is a Texas corporation with its principal place of business located at 9400 Reeds Road, Suite 100, Overland Park, Kansas 66207.

6.       Christie is an individual residing at 2711 W. 69th Street, Mission Hills, Kansas 66208.

7.       Glenn is an individual residing at 10777 Barkley Street, Suite 210, Overland Park, Kansas 66211.

2

8.      Washington International Insurance Company (the "Surety") is a New Hampshire corporation with its principal place of business located at 650 Elm Street, Manchester, New Hampshire 03101.

## JURISDICTION AND VENUE

9.      The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 157 and 1334.

10.     The Court has venue over this action pursuant to 28 U.S.C. § 1409(a).

## FACTUAL ALLEGATIONS

**A.      Meyer And Pratt Obtain, And Assign Substantial Interests In, The Judgment.**

11.     On May 22, 2009, at the conclusion of a nine-day trial, a nine-person jury returned its verdict in favor of Meyer and Pratt, finding, among other things, that:  (i) Christie and Glenn breached their fiduciary duties to, and wrongfully dissociated from their joint venture with, Meyer and Pratt; (ii) Debtor conspired with Christie and Glenn; (iii) Judgment Debtors were liable for punitive damages; and (iv) Meyer's and Pratt's damages included $7,170,603.00 in joint venture lost profits.

12.     On September 8, 2009, the District Court entered the Judgment.

13.     On December 8, 2009, the District Court determined that clear and convincing evidence was presented to the jury from which it could conclude that Judgment Debtors, among others, were liable to Meyer and Pratt for punitive damages.

14.     After entry of the Judgment, Meyer and Pratt assigned substantial interests in the Judgment to certain third-party creditors.  Specifically, Pratt assigned a total of $2,286,000.00, and Meyer assigned a total of $723,508.71, for a total of $3,009,508.71.  Those assignments occurred after the undersigned counsel obtained the Judgment on behalf of Meyer and Pratt.

3

**B.      Christie Alone Posts A Supersedeas Bond, Precluding Meyer And Pratt From Executing On The Judgment Pending Appeal.**

15.      On January 12, 2010, the District Court permitted Christie to post a supersedeas bond in the amount of $1.125 million to stay execution on the Judgment pending appeal.  That amount was far below the amount generally dictated by D. Kan. Rule 62.2.  The District Court did so based on Christie's and Glenn's representations that they had sufficient, but illiquid, assets to pay the Judgment if they did not prevail on appeal, and that requiring them to liquidate their assets to post a greater amount would cause them undue hardship.

16.      On January 15, 2010, a copy of the supersedeas bond was filed with the District Court.  The supersedeas bond obligated the Surety to pay Meyer and Pratt unless Christie satisfied the Judgment.

**C.      The Judgment Is Affirmed On Appeal, Entitling Meyer And Pratt To Pursue Collection Of The Judgment.**

17.      On April 25, 2011, the Tenth Circuit issued its mandate affirming the Judgment.

18.      On that same date, Meyer and Pratt filed numerous motions seeking the entry of orders authorizing them to collect the Judgment, including a motion to release the supersedeas bond.

**D.      Judgment Debtors Thereafter Purportedly Acquire The Iowa Judgments.**

19.      On April 29, 2011, and May 2, 4, and 18, 2011, Judgment Debtors purported to obtain assignments of the "Iowa Judgments."  The Iowa Judgments were entered against Meyer, Pratt, and others on June 3 and 21, 2010, July 7 and 20, 2010, August 17, 2010, and September 3, 2010.

20.      Not only were all the Iowa Judgments entered against Meyer, Pratt, and others after entry of the Judgment and the issuance of the Tenth Circuit's mandate, but they were also

entered after both the Surety posted the supersedeas bond with the District Court and Meyer and

Pratt had become entitled to payment of those funds.

**E.      Debtor Seeks Relief Under Chapter 11 Of The Bankruptcy Code, And Then Apparently Pursues The Collection Of The Supersedeas Bond To Interfere With Meyer's And Pratt's Right To Collect That Bond.**

21.      On May 20, 2011, Debtor filed for relief under chapter 11 of the Bankruptcy Code

in this Court, providing notice to the District Court that purportedly "the claims [Meyer and

Pratt] hold and the offset claims [Debtor] holds will be addressed and determined" in this Court.

22.      On May 24, 2011, Meyer's and Pratt's undersigned counsel provided notice of

their attorney's lien against Christie and Glenn, and personally served notice of that lien on

Christie and Glenn on May 26 and 31, 2011, respectively.

23.      On June 17, 2011, Debtor filed its bankruptcy schedules, which identified the

supersedeas bond as purported property of Debtor's bankruptcy estate.  Christie also declared

therein, under penalty of perjury, that he was the "President and sole shareholder" of Debtor, and

that he owned "100% of all issued and outstanding stock" in Debtor (the "Stock").

24.      In addition, Debtor listed on its schedules claims purportedly belonging to

Amidon Plaza Redevelopment, LLC in the amount of $10,000.00, Belton Associates II, LLC in

the amount of $46,000.00, Broadway 47, LLC in the amount of $7,500.00, and Christie in the

amount of $866,505.49.  Debtor indicated that those claims were purportedly liquidated, non-

contingent, and undisputed.

25.      On June 29, 2011, and August 5, 2011, Judgment Debtors purported to serve

Missouri state court garnishment orders on the Surety, seeking to recover the supersedeas bond

funds in partial satisfaction of the Iowa Judgments.

**F.      The District Court Authorizes Meyer And Pratt To Pursue Collection Of The Judgment Against Christie And Glenn.**

26.      On July 15, 2011, after the automatic stay was modified by this Court, the District Court entered a final amended judgment in favor of Meyer and Pratt that confirmed the Judgment but modified the rate of post-judgment interest.

27.      On July 18, 2011, the District Court entered various orders granting Meyer's and Pratt's previously filed motions seeking authorization to execute on the Judgment against Christie and Glenn, but vacated those orders – pursuant to Judgment Debtors's motion – on July 19, 2011, as prematurely entered in light of the 14-day automatic stay set forth in Federal Rule of Civil Procedure 62(a).

28.      Also on July 19, 2011, Meyer and Pratt filed an amended motion seeking entry of an order directing the Surety to pay the supersedeas bond to them, care of their undersigned counsel.

29.      On July 29, 2011, Judgment Debtors filed a response to Meyer's and Pratt's amended supersedeas bond motion, asserting that "[b]ecause [Meyer and Pratt] owe Christie more than Christie owes [them], Christie can cause the judgment to be paid by setoff, thus voiding the obligation on the bond."  Judgment Debtors also filed a response to Meyer's and Pratt's previously filed motions to execute on the Judgment, arguing that "Meyer and Pratt should not be permitted to interfere with D.J. Christie, Inc.'s ability to confirm a plan of reorganization by executing on a judgment that is subject to setoff in the bankruptcy proceeding."

30.      On October 13, 2011, the District Court (re-)issued its orders authorizing Meyer and Pratt to execute on the Judgment against Christie and Glenn, including its order directing the Surety to disburse the supersedeas bond funds (the "Bond Order") and its Writ of General

Execution (the "Writ").  Importantly, in (re-)issuing those orders, the District Court expressly rejected Judgment Debtors's objections to Meyer and Pratt being able to pursue the collection of their Judgment – including the obligation of the Surety to disburse the supersedeas bond funds – because of Judgment Debtors's alleged right of offset based on the Iowa Judgments.  Neither a motion for reconsideration nor an appeal was filed with respect to those District Court orders.

31.      The Bond Order directed the Surety to pay the supersedeas bond funds to Meyer and Pratt, care of their undersigned counsel, within five days.  The Surety, however, did not comply with the Bond Order, refusing to pay those funds to Meyer and Pratt because it had been served with Judgment Debtors's state court garnishment orders.

32.      The Writ directed the United States Marshals "to seize any non-exempt personal property belonging to" Christie and Glenn.  Notably, in his post-Judgment interrogatory responses, Christie had confirmed his understanding that the Stock is non-exempt personal property subject to execution under Kansas law.  Nevertheless, when the United States Marshals requested that Christie turn over the Stock on both occasions that they attempted to execute on the Judgment pursuant to the Writ, Christie refused to do so.

33.      As a result of the foregoing, Meyer and Pratt moved in the District Court for the issuance of an order to show cause why the Surety should not be held in civil contempt for failing to pay the supersedeas bond funds to Meyer and Pratt pursuant to the Bond Order, and why Christie and his counsel should not be held in civil contempt for refusing to turn over the Stock pursuant to the Writ.

## CAUSES OF ACTION

### A.      First Cause Of Action – Offset Declaratory Judgment

34.      Meyer and Pratt incorporate by reference the foregoing paragraphs as if fully set forth herein.

35.    Judgment Debtors purport to be entitled to offset their liability to Meyer and Pratt pursuant to the Judgment based on their subsequent acquisition of assignments of the Iowa Judgments.

36.    Judgment Debtors are not entitled to an offset based on the Iowa Judgments because the requirement of mutuality is lacking.  The Judgment and the Iowa Judgments are not in favor of the same parties with the same capacities.  Numerous third parties, in addition to Meyer and Pratt, are liable for the Iowa Judgments.  Meyer and Pratt also assigned substantial interests in the Judgment to certain third-party creditors prior to Judgment Debtors's acquisition of assignments of the Iowa Judgments.  In addition, the liability of Judgment Debtors is derived from their breaches of fiduciary duties, and conspiracy to breach those duties, whereas the liability for the Iowa Judgments is based on unrelated contractual breaches of various debtor-creditor relationships.

37.    Judgment Debtors also cannot demonstrate that they are equitably entitled to an offset.  Judgment Debtors are intentional tortfeasors whose wrongful conduct against Meyer and Pratt was found by a jury to justify punitive damages.  Moreover, Judgment Debtors apparently used the very "illiquid" assets that they previously represented to the District Court were unavailable to post a larger supersedeas bond to, instead, acquire the Iowa Judgments in an effort to frustrate Meyer's and Pratt's collection of the Judgment.

38.    Accordingly, the Court should declare that Judgment Debtors are not entitled to an offset based on the Iowa Judgments.

**B.    Second Cause Of Action – Supersedeas Bond Declaratory Judgment**

39.    Meyer and Pratt incorporate by reference the foregoing paragraphs as if fully set forth herein.

8

40.     The District Court's Bond Order requires the Surety to pay the supersedeas bond funds to Meyer and Pratt.

41.     The Surety has failed to pay the supersedeas bond funds to Meyer and Pratt pursuant to the Bond Order because Judgment Debtors served it with purported state court garnishment orders based on the Iowa Judgments.

42.     The purported garnishment liens arising from Judgment Debtors's state court garnishment orders are either void or subordinate to other valid interests.

43.     The purported liens are void under the Supremacy Clause of the United States Constitution because it is inconsistent with the District Court's order allowing Christie to obtain a stay against execution pending appeal by posting the supersedeas bond, and its subsequent Bond Order directing the Surety to pay the supersedeas bond funds to Meyer and Pratt.

44.     Judgment Debtors have no ability to garnish the supersedeas bond funds because Meyer and Pratt previously assigned the right to receive all those funds (and millions of dollars more) to their creditors pursuant to (i) the undersigned counsel's prior attorney's liens against non-debtors Christie and Glenn and (ii) Meyer's and Pratt's prior assignments of substantial interests in the Judgment.

45.     Meyer's and Pratt's prior Judgment lien takes priority over Judgment Debtors's subsequent garnishment liens.

46.     Accordingly, the Court should declare that Meyer and Pratt are immediately entitled to receive the supersedeas bond funds pursuant to the Bond Order.

**C.      Third Cause Of Action – Stock Declaratory Judgment**

47.     Meyer and Pratt incorporate by reference the foregoing paragraphs as if fully set forth herein.

48.     The District Court's Writ entitles Meyer and Pratt to levy against non-exempt personal property of Christie and Glenn to satisfy the Judgment.

49.     The Stock is non-exempt personal property subject to execution under Kansas law.

50.     Christie, however, has wrongly refused to turn over the Stock to Meyer and Pratt.

51.     Accordingly, the Court should declare that Meyer and Pratt are entitled to acquire the Stock from Christie pursuant to the Writ.  The Court should also declare that, as a result of their acquisition of the Stock, Meyer and Pratt are immediately entitled to direct and exercise control over the business and affairs of Debtor.

**D.     Fourth Cause Of Action – Equitable Subordination**

52.     Meyer and Pratt incorporate by reference the foregoing paragraphs as if fully set forth herein.

53.     Meyer's and Pratt's proofs of claim against Debtor are based solely on the Judgment.

54.     Meyer and Pratt have disputed the claims of Amidon Plaza Redevelopment, LLC, Belton Associates II, LLC, Broadway 47, LLC, and Christie against Debtor, including because they belong to insiders of Debtor.

55.     Christie is a principal of Amidon Plaza Redevelopment, LLC, Belton Associates II, LLC, and Broadway 47, LLC, and is the President and sole shareholder of Debtor.

56.     Christie breached his fiduciary duties to Meyer and Pratt, and engaged in a civil conspiracy with Glenn and Debtor to breach those fiduciary duties, resulting in the entry of the Judgment.

57.     Accordingly, because Amidon Plaza Redevelopment, LLC, Belton Associates II, LLC, Broadway 47, LLC, and Christie are insiders of Debtor, and because the Judgment arises

from Christie's tortious conduct, their claims against Debtor are subject to equitable subordination vis-à-vis the claims of Meyer and Pratt against Debtor.

**E.**     **Fifth Cause Of Action – Fraudulent Transfers**

58.     Meyer and Pratt incorporate by reference the foregoing paragraphs as if fully set forth herein.

59.     Christie and Glenn have made transfers of assets that were fraudulent as to Meyer and Pratt because those transfers were made with actual intent to hinder, delay, or defraud Meyer and Pratt.   Specifically, Christie and Glenn made transfers to insiders, transfers after the Judgment was entered and/or after the Tenth Circuit affirmed the Judgment and issued its mandate, and/or transfers of purportedly illiquid assets that were previously represented to the District Court as being unavailable for a larger supersedeas bond.

60.     Because the transfers were fraudulent, Meyer and Pratt are entitled to void the transfers and/or levy execution on the assets transferred or the resulting proceeds.

61.     Because the fraudulent transfers were intentional, Meyer and Pratt are entitled to an award of punitive damages.

## DEMAND FOR JURY TRIAL

62.     Meyer and Pratt demand a jury trial on all issues so triable.

## PRAYER

63.     WHEREFORE Meyer and Pratt respectfully request that the Court enter a judgment in their favor that:

a.     declares that Judgment Debtors are not entitled to an offset based on the Iowa Judgments;

b.     declares that the Surety must immediately pay the supersedeas bond funds to Meyer and Pratt pursuant to the District Court's Bond Order;

11

c.     declares that Christie must immediately turn over the Stock to Meyer and Pratt, who are then immediately entitled to direct and exercise control over the business and affairs of Debtor;

d.     equitably subordinates the claims of Amidon Plaza Redevelopment, LLC, Belton Associates II, LLC, Broadway 47, LLC, and Christie against Debtor to the claims of Meyer and Pratt;

e.     authorizes Meyer and Pratt to void Christie's and Glenn's fraudulent transfers and/or levy execution on the assets transferred or the resulting proceeds;

f.     award Meyer and Pratt punitive damages;

g.     award Meyer and Pratt pre- and post-judgment interest; and

h.     award Meyer and Pratt such other and further relief to which they are entitled.

Dated:  January 17, 2012

Respectfully submitted,

/s/ Matthew T. Geiger
Matthew T. Geiger
Bar No. 19205
Walter Brown
Bar No. 19166
GADDY GEIGER & BROWN PC
2345 Grand Boulevard, Suite 675
Kansas City, Missouri 64108
Telephone: 816 221-8989
Facsimile: 816 221-8988

Kenneth N. Hickox, Jr. *(pro hac vice)*
Robert M. Millimet *(pro hac vice)*
BICKEL & BREWER
4800 Comerica Tower
1717 Main Street
Dallas, Texas 75201
Telephone: (214) 653-4000
Facsimile: (214) 653-1015

**ATTORNEYS FOR
DEFENDANTS/COUNTERCLAIMANTS/CRO
SSCLAIMANTS ALAN E. MEYER AND JOHN
R. PRATT**

## CERTIFICATE OF SERVICE

This is to certify that on January 17, 2012, a true and correct copy of the foregoing document was served on all counsel of record via the Court's CM/ECF electronic notification system.

/s/ Matthew T. Geiger
Matthew T. Geiger

5260074.2
2036-02

13